## JAMES EGGLESTON vs. HART DOOLITTLE.

An ecclesiastical society was organized in 1845 for the purpose of building a church and maintaining public worship. The church was immediately after built, mostly by subscription. In 1865 the society having become feeble, and being in debt to nearly the value of the church, voted to sell it for the payment of its debt, under an arrangement by which it was to be removed to an adjoining town and established there as a church of the same denomination. Held, on a petition for an injunction brought by a member of the society who had contributed towards the erection of the church, that the society had power to do this, and that their action in the circumstances was not unreasonable.

Whatever the society could do, it could do by the vote of a majority.

PETITION for an injunction against the removal of a church edifice owned by a religious society of which the petitioner was a member.

The case was referred to a committee, by whom the following facts were found.

A religious society was organized in the town of Barkhamsted in Litchfield county in the year 1845, under the name of " The Baptist Ecclesiastical Society of Pleasant Valley," both the petitioner and the respondent being original members thereof and signing the articles of association, the object of the association being, as stated in the articles, to build a house of public worship in Pleasant Valley, and to maintain the preaching of the gospel in it. A house of worship was soon after built, mainly by subscription, costing about $1500, the petitioner contributing $50 in cash and $50 in work. A Baptist church was regularly organized and used the house as a place of worship down to 1865. The legal title to the property was taken and held by certain members of the society in trust for the society. On the 5th of August, 1865, at a meeting of the Baptist Ecclesiastical Society, duly warned and held, the following vote was passed:—" Whereas the Baptist Ecclesiastical Society of Pleasant Valley has become weak, and wholly unable to support the gospel, and are owing Hart Doolittle $875 by note, and feeling that it is expedient to move their house of worship to New Hartford for the more special benefit and accommodation of said society :—Now, therefore, *Resolved,* that we empower and instruct the trustees of said society to give Hart Doolittle a deed of said house and all that appertains thereto, with the lot of land on which it stands, provided he shall cause the said house to be so moved to said New Hartford as aforesaid, and give up and cancel the said note which he holds against the said society. Said house, if moved as aforesaid, is permanently to be used as a house and place of public worship for the Baptist denomination. *Voted* unanimously, to instruct the trustees of the society to deed the house to Hart Doolittle, as per resolution." In accordance with this vote the trustees, on the 21st of August, 1865, executed and delivered to Hart Doolittle, the

respondent, a deed of the house and land, he having first given up the note in accordance with the vote, and upon the delivery of the deed Doolittle entered and took possession of the house, and commenced removing the slips, pulpit and other fixtures, and so continued till the service of the injunction upon him. He intended to take down and remove the house to New Hartford, a distance of about three miles, and there re-erect it, and dispose of it to the Baptist Ecclesiastical Society of New Hartford, and the last named society was to pay him for the house the sum of $600. The petitioner was not present, and had no actual notice of the meeting of the society on the 5th of August, 1865, and has never consented to the sale of the house, and is opposed to its sale and removal; and Julius C. Pratt and James H. Cook, other members of the society, are also opposed to its sale and removal. The society has no property except the house and the land on which it stands. It is indebted to the said Doolittle in the sum of $875. It has become weak and unable to support the preaching of the gospel, and it would be for the interest of the Baptist church to remove the house to New Hartford; and at a meeting of the members of that church, held on the 2d of September, 1865, the following resolution was unanimously adopted, viz :—"*Resolved,* upon due consideration and investigation, that we approve the action of the Baptist Ecclesiastical Society of Pleasant Valley, had in society meeting on the 5th day of August, 1865, relative to the disposition and conveyance of the Baptist church edifice in that place, believing that such course will best promote the welfare of this church and the surrounding community." The respondent Doolittle, in attempting to take down and remove the house, was acting in good faith under the deed to him by the trustees of the society, believing that he had a right under the deed to remove the house. The value of the house and land at the date of the deed was $1000. The Baptist Ecclesiastical Society was also made a party respondent.

Upon these facts the case was reserved by the superior court for the advice of this court.

*Foster*, for the petitioner.

1. The statutes relating to ecclesiastical societies stand in the place of charters to the corporations organized under them. So far as the rights of individual members are affected, these statutes should be construed strictly, and the general law of corporations, to which these societies are subject, should be rigidly enforced in its application to them.

2. The powers of these societies are defined by statute, among which is the power to build, repair and maintain churches, and generally to provide for the support of the ministry within such society; but there is no power given them to demolish churches already built and to remove them to another society or town. Revision of 1866, p. 134, sec. 208.

3. This church edifice, with the land on which it stands, is corporate property, and is subject, as to its use and management, to the rules of the law of corporations. Among these rules is the following: that a corporation " possesses only those properties which the charter of its creation expressly confers upon it, and such as are incidental to its very existence, being such as are best calculated to effect the object for which it is created." *Dartmouth College* v. *Woodward*, 4 Wheat., 636. The sole object for which ecclesiastical societies are created is the building and maintaining churches and providing for the support of the ministry, and such corporations hold the corporate property in trust for the benefit of the individual corporators; and when they are wasting or misappropriating the corporate property or funds, courts of equity treat them as trustees of such property, and will interfere to protect individual corporators, upon the ground that such wasting or misappropriation is a fraud upon the rights of the individual corporators. If this were not so, a bare majority of the stockholders of any corporation could in this way deprive the minority of all their rights in the corporate property. *Scofield* v. *Eighth School District*, 27 Conn., 499.

4. The land upon which this church stands was deeded to the " trustees of the society and their successors in office, to hold in trust for the society." How are they fulfilling this trust by deeding the land with the house to an individual, to

be by him removed and sold to another society for half its value, thus depriving the trustees and their successors of all right and interest, and through them the society of all property in the land and house. The corporation can have no such power, and the petitioner dissents from the action of the majority.

5. The petitioner has no remedy at law, and an injunction is the only process applicable to the case. If he cannot be protected by this or some similar proceeding he has no remedy by which he can protect his rights and interest in this property.

*Goodwin* and *Hitchcock,* for the respondent.

1. The petitioner is not entitled to an injunction restraining the respondents from disposing of their church property in accordance with their votes. 1st. Because the interests of the society at that place require it. 2d. Because the general good of the inhabitants in that place and the surrounding community requires it. 3d. Because there is no public statute prohibiting it. 4th. Because the constitution of the society does not forbid it.

2. Corporations of this character have the power, as an incidental one, to sell their property, especially where the same is wanted for the payment of debts, unless expressly restrained by statute or by their articles of association. Angell & Ames on Corp., sec. 187; *Fisher* v. *Glover,* 4 N. Hamp., 180; *Fassett* v. *First Parish in Boylston,* 19 Pick., 361.

3. The society by vote, in a regular meeting held for that purpose, having decided to sell and convey the house and land with a view to the payment of their debt, under an arrangement by which they were still to have the use of the house for the benefit of their denomination in a neighboring locality, the petitioner as a member of the society is bound by such vote, whether he was present or not. Angell & Ames on Corp., sec. 499; 1 Parsons on Cont., 120; *Field* v. *Field,* 9 Wend., 394; *Case of St. Mary's Church,* 7 Serg. & R., 517; *Presbyterian Congregation* v. *Johnston,* 1 Watts & Serg., 9. This rule is reasonable and founded in good common sense,

and if it did not prevail and entire unanimity was required no society or corporation could act.

4. The acts of the society, independently of the question of the payment of the debt, are not inconsistent with the object and purpose for which the society was organized and the house built. 1st. The society is without territorial limits, and may embrace the contemplated location as well as the place where the house now stands. 2d. The constitution of the society does not define the place where the house shall be located or where it shall remain. 3d. The great object of the society was to secure the preaching of the gospel, and the house was built only as a means to that end. The society has become too poor to maintain preaching, and without it the house is of no use ; while by its removal and location in another place the preaching of the gospel can be maintained, and that too within the reach of the same neighborhood for the benefit of which the house was originally built.

PARK, J. It appears in this case that all the property belonging to the society of which the petitioner is a member is of the value of one thousand dollars, and that the society is indebted to the respondent Doolittle, in the sum of eight hundred and seventy-five dollars, leaving only one hundred and twenty-five dollars worth of property more than sufficient to pay the debts of the society. It further appears that the society is unable longer to support the preaching of the gospel, and that it would be for the interest of the Baptist church organized in Pleasant Valley that the church edifice should be removed to New Hartford, in accordance with the conditions specified in the vote of the society ; thus enabling the society to pay its indebtedness, and affording its members the opportunity of enjoying the preaching of the gospel in the same edifice at another place.

From these facts we are of the opinion that the society acted wisely as well as legally in disposing of their property in the manner specified. They were indebted to an amount almost equal to the value of their property. They had no other means of payment. Their property was exposed to

attachment. Nothing was before them but bankruptcy and dissolution. Under these circumstances the society succeeded in paying their indebtedness and preserving to themselves some right to the property. They acted in good faith, and for the best interest of the society under all the circumstances. Corporations may dispose of their property to pay their debts when necessary for the purpose, and what is lawful for corporations to do, may be done by a majority. Angell & Ames on Corp., §§ 187, 499 ; 1 Parsons on Cont., 120 ; *Fisher* v. *Glover*, 4 N. Hamp., 180 ; *Fassett* v. *First Parish in Boylston*, 19 Pick., 361.

We advise the superior court to dismiss the petition.

In this opinion the other judges concurred.