HUBBARD v. THE GERMAN CATHOLIC CONGREGATION et al.

1. Religious society: REAL ESTATE: NOTICE OF MEETINGS. The rule conceded that a majority of an unincorporated religious society may direct and control the disposition of real estate belonging to it, notice of the meeting at which such action is taken having been given to the members of the society.

Hubbard v. The German Catholic Congregation.

2. —— Where it appeared that the business meetings of the society were invariably held in the evening, and were called by announcement to the children at the school connected with the society, and by the ringing of the bell; and it was shown that the usual notice was given of the meeting in question, that in addition thereto, a written notification was carried around to most of the members, and that none of those resisting the action taken, claimed that they did not know that the meeting was being held, it was *held*, that the notice was sufficient.

3. —— POWER TO MORTGAGE: TRUSTEES: COMMITTEE. Where power was given to a committee of the society, appointed by resolution, for that purpose, to negotiate a loan for the payment of a debt due from the society to an individual, and where, by the same resolution, certain trustees, who held the title of real estate belonging to the society, were directed to execute a mortgage thereon to secure such loan, it was *held*, the committee failing to make the loan, that they might properly direct the trustees to execute the mortgage to the creditor himself for the purpose of securing his claim, and that the same was valid when so made.

4. —— That all of such trustees did not join in the execution of the mortgage, but only a majority of them, would not, under the direction given, render the mortgage invalid. A court of equity has power in such case to declare the mortgage binding according to the intent of the parties, and to decree a foreclosure thereof.

5. —— POWER TO SELL: MORTGAGE. But a committee authorized to *sell* certain real estate belonging to the society and to execute a deed to the purchaser therefor, in order to raise a fund for the purpose of paying the general debts of the society, is not authorized to execute a mortgage or deed of trust for the purpose of securing the various creditors holding such claims.

6. —— CONVEYANCE: RATIFICATION BY PAROL: ESTOPPEL. Nor would a parol ratification, as by a vote of the members of a meeting of the society, to which the committee reported their action, validate the instrument.

*Appeal from Johnson District Court.*

THURSDAY, MARCH 28.

THE German Catholic Congregation of Iowa City is a voluntary association, unincorporated, and composed of many members. Said congregation became the owner of a portion of block 32 in Iowa City, on which was erected a brick building, which was used for many years as a church,

and also as a school for the instruction of the youth of the congregation.   The congregation employed teachers for the school, and had a priest to conduct religious services.

In 1864 the congregation, for the purpose of providing a parsonage for the priest, purchased block 34, in Iowa City, with the improvements thereon, for $2,000.   The congregation raised $1,200 of the purchase-money.   William Louis, F. P. Brassart, Henry Luehimann, John Luppel, John Goetz, Peter Fath, C. A. Voght, Peter Statzer, Frank H.L.ienschut, and Jacob Ruce, who were all members of said congregation, advanced a portion of the purchase-money, in the aggregate $800.

Block 34 was conveyed to these persons to hold the legal title until their advances should be paid, when they were to convey, or do with the title what the congregation might order.   These advances have all been paid, and the said block is the property of the congregation, though the legal title is still held by the ten persons above named.

On the 8th day of June, 1869, said congregation, being indebted to Max Otto for his services as teacher, authorized said persons holding the legal title to block 34 to mortgage the same to raise money to pay said Otto.   Afterward six of said persons executed a mortgage on said premises to Otto, to secure him the sum due, the remaining four of the persons holding the legal title refusing to join in the execution of the mortgage.

Afterward the church and school-house situated on block 32 was burned, and subsequently was rebuilt.   In the rebuilding of said structure the congregation incurred an indebtedness to a large amount.   On the 30th day of December, 1869, the congregation, at a meeting regularly held, resolved to sell block 34 for the payment of the debts incurred, and appointed Charles A. Vogt and William Louis to conduct the sale.   These parties, not being able to effect a sale, executed and delivered to William H. Hubbard, as trustee of the creditors, a deed of trust of said

block. This deed of trust also secured the $500 due Otto, for the security of which the mortgage had before been executed.

The petition prays that said block be decreed to be the property of the congregation, and that said deed of trust and mortgage be foreclosed, and that general relief be granted. Upon the hearing, the petition was dismissed.

Plaintiffs appeal. The further necessary facts are stated in the opinion.

*Edmonds & Ransom* for the appellant.

*Fairall, Boal & Jackson* for the appellees.

Day, J. — I. The position of appellant, that a majority of an unincorporated religious society may direct and con-

1. Religious society: real estate: notice of meetings.

trol the disposition of its property, is not controverted by the appellee. It is claimed, however, that this rule presupposes due notice to the entire body or its constituents. The weight of the evidence, we think, establishes the fact that such notice was given of each of the meetings at which the association acted with reference to the property in question. The testimony shows that business meetings were invariably held in the evening, and were called by announcement to the children at school and by ringing the bell. The members of the association lived within hearing of the bell, and knew when it rang in the evening that it was for the purpose of convening a business meeting, as no religious exercises were held in the evening.

This notice was given of every meeting held, and in addition thereto a written notification was carried around to most of the members of the association.

None of those who resist the claim of plaintiffs contend that they did not know that the meetings were being held, at which the various acts of the association under

which plaintiffs claim occurred. Some of them admit that they heard the bell and paid no attention to it. The notice was as complete as to such an association can ever be practicable, and the acts of those assembled pursuant to the notice are binding upon the congregation. *Eggleston* v. *Doolittle*, 33 Conn. 396 ; *Horton* v. *Baptist Church*, 34 Vt. 309 ; *McBride* v. *Porter*, 17 Iowa, 203 ; Angell & Ames on Corp. 501 502, 505 ; *Kings* v. *Whittaker*, 9 B. & C. 648.

II. The association being indebted to Max Otto for teaching, at a meeting regularly convened on the 3d day of June, 1869, passed a resolution as follows :   That William Louis, Peter Statzer and John Hanten are hereby appointed a committee to borrow $500, and that those members of the congregation who hold the priest's house (block 34, in Iowa City), as trustees of the congregation, shall, for that purpose, execute a mortgage for the above amount, and that said $500 shall be used for paying the school debts.   Not being able to borrow this sum, they caused a mortgage to be executed to Otto to secure the indebtedness to him.   This, in legal contemplation and effect, is the same as though they had borrowed $500 of Otto, and used the sum obtained in payment to him of the sum due him.   At the time this resolution was passed, the ten persons before named had been fully reimbursed the amount of their advancements, and they then held the naked legal title in trust for the congregation, having no interest therein except as members of the congregation.   The mortgage to Otto was executed by six of these persons, the remaining four refusing to join in the conveyance.   The mortgage recites the fact that the German Catholic congregation of Iowa city is the owner of said block 34, and that the same is held by the ten persons named, as trustees of the congregation, and that the mortgage is made pursuant to a resolution of the congregation authorizing the same.

*3. power to mortgage: trustees: committee.*

It is claimed by the appellee that this mortgage is invalid because not signed by all the ten persons named as trustees.

It is urged that the mortgage could have no validity unless executed by *all* the trustees. That no one of them, nor any number of them less than the whole, had any power to act. Many authorities are cited in appellee's brief in support of this position. See *Damon* v. *Granby*, 2 Pick. 352; *Copeland* v. *Mercantile Ins. Co.*, 6 id. 20; *Kupfer et al.* v. *South Parish in Augusta*, 12 Mass. 189; *Sutton* v. *Cole*, 3 Pick. 244; *People ex rel.* v. *The Mayor, etc.*, 25 Wend. 9, 26 id. 634; *Commonwealth* v. *Ipswich*, 2 Pick. 70; *Wilson* v. *Townsend*, 1 B. & A. 608; Dunlap's Paley's Agency, 176, 177; *McRae* v. *Farrow*, 4 Hen. & Mumf. 444.

We are not now considering the sufficiency of a conveyance, executed by a part of the trustees, in a court of law, to vest the legal title in the grantee. These trustees held simply the legal title, and were under obligation to dispose of it pursuant to the direction of the congregation. They were vested with no discretion; they had no judicial powers; they were simply the ministers for carrying into execution the will of the congregation properly expressed. They were under legal obligation to execute the mortgage when directed by the association. Upon their refusal to do so, a court of equity would have compelled compliance. The most that can be said is that there has been a defective execution of the power conferred.

A court of equity looks upon that as done which ought to be done, and will compel the doing of that which is necessary to the preservation of the rights of all parties. As the congregation, the party beneficially interested in the lot, has ordered the same to be mortgaged for a particular purpose, a court of equity has power to declare the mortgage binding, according to the intent of the parties, and to decree a foreclosure thereof.

III. The congregation being indebted for the erection of the new building on block 32, at a meeting held on the 30th December, in 1869, passed the following resolutions:

*5——power to sell: mortgage.*

" That block No. 34 shall be sold to pay the debts which rest on the school-house.

" That Charles A. Vogt and William Louis attend to the selling of the priest's house with block 34, to the best interest of our congregation, and they are hereby specially authorized to execute a deed in the name of the German Catholic Congregation; and the said Charles A. Vogt and William Louis shall inform the Rev. Father Brasel, administrator of the diocese thereof." These parties were unable to sell, because a part of the ten persons holding the legal title refused to execute the deed.

They then executed a deed of trust to Hubbard, to secure the various creditors of the association. It is claimed that the power granted to these persons to sell did not authorize them to execute this deed of trust.

Upon the other hand, appellant claims that the power to sell includes the power to mortgage, citing *Williams* v. *Woodward*, 2 Wend. 492; *Penn. Ins. Co.* v. *Austin*, 42 Penn. St. 257; 4 Kent, 345. These authorities merely state the proposition without more.

It is believed that the weight of authority is opposed to this view. See *Bloomer* v. *Waldron*, 3 Hill, 361. (Citing 1 Sugd. on Powers, 6th Lond. ed., 538; 1 Pow. on Mort. 61, Rand's ed., and note 1; 3 id. 1033, note *a;* 2 Chance on Powers, 388, Lond. ed. of 1831; *Halderby* v. *Spofforth,* 1 Eng. Jurist, Am. ed. of 1840, 198.) See, also, *Waldron* v. *McComb*, 1 Hill, 111; *Contant* v. *Servoss*, 3 Barb. 133; *Albany Fire Ins. Co.* v. *Bay*, 4 Comst. 9; *Cumming* v. *Williamson*, 1 Sandf. Ch. 17; *Wood* v. *Goodridge*, 6 Cush. 117; *Russel* v. *Russel*, 36 N. Y. 581.

It may be conceded, as declared in 4 Kent, 345, that: " The intention of the donor of the power is the great principle that governs in the construction of powers; and

in furtherance of the object in view, the courts will vary the form of executing the power, and, as the case may require, either enlarge or limit to a general power, or cut down a general power to a particular purpose." This rule will not authorize us to adopt the construction contended for by appellant.

The congregation was in debt a large amount, aggregating over $1,900. The discharge of this debt was the object had in view at the time of directing the sale of the block in question. The discharge of the debt would release the members of the congregation from any further concern or solicitude in respect to it, or liability therefor. Instead of making the sale, a deed of trust is executed, which merely creates a lien for the security of the debt, and leaves the congregation still liable therefor. They are placed no nearer a liquidation of their indebtedness than they were before. They are still liable for any balance that may remain due, after exhausting the mortgaged property; they are really placed in a worse condition than before, for by the trust deed a lien is created upon the property, out of which they intended to pay the debt; and their power to manage and conduct the sale of the same is surrendered to the trustees, or the sheriff after foreclosure.

They are involved in the expenses of a foreclosure, and are deprived of the means of preventing litigation by a payment of the debt.

The deed of trust authorizes the trustees to sell the property at public sale, if the amount secured is not paid within thirty days.

It seems to us quite clear that the congregation contemplated no such execution of the power at the time they authorized these parties to sell, and that the trust deed was executed by them without authority.

IV. It is claimed, however, that the making of this trust deed was subsequently ratified by the congregation. The

6. —— ratifica-
tion by parol;
estoppel.

testimony shows that Louis and Vogt reported their action to a meeting of the association, and that the congregation, by a vote, ratified their action. No record or minute was kept of this action. It was simply a parol ratification of a conveyance of real estate. The case presents no question of estoppel. It is purely one of a parol ratification of an unauthorized conveyance of real estate.

If such ratification were to be allowed to validate a prior transfer, the title to real property would cease to vest in deed, and the evidence would exist merely in parol.

For a strong authority against the validity of such ratification, see *Blood* v. *Goodrich*, 9 Wend. 68, and the cases cited. The case of *Haynes, Hutt & Co.* v. *Seachrist*, 13 Iowa, 455, is one where it was held that the deed of a member of a firm may be ratified in parol by the other member. The doctrine does not extend beyond cases of partnership.

In our opinion the court should have decreed a foreclosure of the mortgage. In dismissing the petition as to the trust deed there is no error.

V. At a meeting regularly called the congregation determined to devote the property covered by the trust deed to the payment of their debts, and appointed trustees to make sale of it for that purpose. It is not disputed that the congregation is largely indebted. The trust has not been executed. Under the prayer for general relief, it is competent for a court of equity to execute this trust in such way as to effectuate the intention of the parties. The cause will, therefore, be remanded to the district court, with directions to take an account of the various sums due the respective creditors of the congregation, and to provide for a sale of said premises for the satisfaction thereof, in such manner as shall best conserve the interests and protect the rights of all parties.

Reversed.