### 6527. NEAL & SON *v.* STANLEY.

BROYLES, J. 1. Ordinarily, when one renders service to another, which the latter accepts, a promise to pay the reasonable value thereof is implied. Civil Code, § 5513; *Hudson* v. *Hudson*, 90 *Ga.* 581 (16 S. E. 349).

2. While the general rule is that a past consideration will not support a subsequent promise (1 Elliott on Contracts, § 213), an exception to the rule is recognized where the subsequent promise is one which, under the facts surrounding it, would be implied by law. 1 Elliott on Contracts § 214.

(a) Where the services were rendered upon a request which reasonably implied a promise of remuneration, no promise of remuneration being made at the time, but subsequently an express promise was made to pay for them, even if this latter promise did not relate back to the previous request, so as to be supported by the services rendered, it was at least evidence tending to show that the services were not intended to be gratuitous, and that there was an implied promise to pay for them. 1 Elliott on Contracts, § 214, and cases therein cited.

3. The evidence in this case was sufficient to authorize a finding that the services rendered by the plaintiff were valuable, were directly beneficial to the defendant, and were requested by the defendant before they were rendered, and that both the plaintiff and the defendant impliedly understood, before and while such services were being performed, that they were to be remunerated. In such a case, where, immediately after the services are completed, the defendant promises the plaintiff to pay for them a specified, reasonable sum, he is bound by the promise, and the plaintiff does not have to sue upon a quantum meruit, but can bring his action upon the promise.

4. The court did not err in overruling the motion for a new trial.

                    *Judgment affirmed. Russell, C. J., concurs dubitante.*
                         DECIDED JANUARY 20, 1916.

Complaint; from municipal court of Atlanta. February 15, 1915.

The action was by F. R. Stanley, "doing business as Americus Machine Shop," against W. A. Neal & Son, on an account, one of the items of which was "commission on traction-engine sold to Mr. Brown, $150." The trial resulted in a judgment against the defendants for the amount of this item. The plaintiff's testimony

was as follows: W. A. Neal & Son had the agency for a traction-engine. At that time the Americus Machine Shop was owned and operated by Mr. C. H. Duer and myself, but since that time I have bought Mr. Duer out, and am now the sole owner of the Americus Machine Shop and of this claim against W. A. Neal & Son. This was about the middle of 1911. We knew a Mr. Brown who lived near Americus, and knew the condition of his farm, and believed that he could be sold one of these traction engines. We spoke to Mr. W. A. Neal Jr. (one of the defendants) about it, and he asked us to take him out to see Mr. Brown. Mr. Duer carried Mr. Neal out to see Mr. Brown in an automobile belonging to the shop, and after that Mr. Duer carried Mr. Neal out several times, and I went along myself once. We recommended the engine to Mr. Brown and boosted it all we could, and did everything in our power to assist Mr. Neal in making the sale. Finally Mr. Brown bought the engine, and Mr. Neal said, right after the sale had been closed, "I am going to pay you $150 for your services in helping to make this sale." He had not before said anything about what he would pay us; in fact nothing was said before this time about compensation, although we have made sales of this character several times before and have always been paid, and naturally expected to be paid for our services in this matter. I have repeatedly asked Mr. Neal for this money, and he has always put me off from time to time, but has promised to pay each time that I spoke to him about it, except the last time I talked to him. At that time he was carrying me home one night. When I went to get out of the car I asked him about paying this $150, and he said, "I don't reckon I ever will pay this." He did not give any reason. After that I put the matter in the hands of my attorney. When he first sold the engine he said he would pay us then if he could discount the notes, but he could not discount them, so he said he would pay when the notes were collected. The notes have been collected. They were paid before this suit was brought. When the firm of Americus Machine Shop dissolved, this account against Neal & Son was transferred to me.

W. A. Neal Jr. testified, that Mr. C. H. Duer, who at the time was a member of the firm of Americus Machine Shop, came to him and told him that he knew a Mr. Brown, who wanted to buy a traction-engine, and offered to take him out to see Mr. Brown.

Some time later Mr. Duer did take him out to see Mr. Brown, and he (the witness) · on this occasion sold Mr. Brown the traction-engine. Immediately after the sale of the engine he said to Mr. Duer, "You will get $150 out of this. We will pay you $150 for services in the sale." He (the witness) was going to make a commission of $500 out of the sale, and promised Mr. Duer $150. Nothing was said about compensation at or before the time the sale was made, and Mr. Duer voluntarily offered to take him out to see Mr. Brown. The only services Duer rendered consisted in telling him that Mr. Brown wanted to buy an engine, and in driving him out to see Mr. Brown once. He understands that Mr. Duer went out to see Mr. Brown two or three times about buying the engine. He knew that Mr. Duer was a member of the firm of the Americus Machine Shop, but he was dealing with him in this transaction as an individual, and not as a member of the firm. He did not deal with Mr. F. R. Stanley or the Americus Machine Shop at all in this transaction. Mr. Stanley sent him a bill for $150 for commission on sale of traction-engine to Mr. Brown, but he refused to pay it, and has told Stanley that he did not owe him or the Americus Machine Shop anything in regard to this transaction.

C. H. Duer testified, that he thought Mr. Brown would buy a traction-engine, and went out to see him two or three times in regard to it. He told Mr. W. A. Neal Jr. that Mr. Brown would buy an engine, and offered to take him to see Mr. Brown, and later took him out to see Mr. Brown, at which time Mr. Neal sold Mr. Brown the engine. In this transaction he was acting for the firm known as the Americus Machine Shop, though nothing was said about the Americus Machine Shop being interested in the transaction. Mr. Neal voluntarily offered to give him $150 after the engine had been sold and after he had rendered his services. Nothing was said about compensation before the engine was sold or at the time of the sale. He expected to receive something for his services. His services consisted of going out to see Mr. Brown two or three times, and taking Mr. Neal out to see him once. The Americus Machine Shop was not engaged in the business of selling engines on commission, but did a general machine business.

The contention of the defendants was that the promise to pay $150 was a voluntary promise, based on a past consideration, and placed no legal obligation on the defendants to pay that amount;

and that "the plaintiff could only recover on a quantum meruit for the value of the services rendered, but this suit was brought on the voluntary promise, and the value of the plaintiff's services was not shown by the evidence."

E. V. Carter Jr., for plaintiffs in error.

A. L. Richards, Mayson & Johnson, contra.

RUSSELL, C. J., concurring dubitante. I readily concede that an implied promise to pay for services rendered may authorize a recovery as on a quantum meruit in such an amount as may be reasonable compensation for these services, but I gravely doubt whether the rule can be so far extended as to substitute an express promise to pay a definite amount as the measure for fixing the value of services not rendered under a contract, instead of the reasonable compensation which rests upon an implied promise to pay what the services are reasonably worth. In other words, the right to bring a suit upon a quantum meruit would seem to be excluded where the plaintiff relies even in part upon an express promise, especially when the promise was subsequent to the actual performance of the services.