No. 9197.

UZZELL, ET AL. v. MCCLELLAND, ET AL.

1. DEED—*Consideration.* The Reverend Thomas A. Uzzell was for twenty-eight years the pastor of the People's Tabernacle Church in Denver. For the most of this time he received a salary varying from $50.00 to $150.00 per month—for the greater part of the time much less than $150.00. During a portion of the time, holding a public office, he received no salary. The money for the payment of his salary, for the other expenses of the society, and for the purchase of certain real estate were obtained by his efforts from those not associated with the church, but who contributed through confidence in the pastor, and an appreciation of his work. Beginning with nothing, the organization, through his efforts, were possessed of a church building worth $50,000, three other lots adjacent thereto, not used for religious purposes, $1700 in the treasury, and owed no debts of consequence.

During his last illness, at a meeting of the society duly called, it was voted by a large majority to convey to the pastor the three lots adjacent to those on which the church was situated. The president of the board having conveyed to him but two of the lots so designated, after the death of Uzzell, at a meeting duly called, the society voted, again by a large majority, to convey all the three lots adjacent to the church, to his heirs.

The conveyance was supported, as upon sufficient consideration.

2. RELIGIOUS SOCIETY—*Call of Meetings.* Sec. 865 of the Revised Statutes has no application to religious organizations. Their own rules and regulations control in the call of their meetings.

*Error to the Denver District Court, Hon. H. P. Burke, Judge.*

Mr. HENRY E. MAY, *for plaintiffs in error.*

Mr. T. H. HOOD, Messrs. MURRAY & INGERSOLL, for defendants in error.

Chief Justice Hill delivered the opinion of the court:

THIS action was brought by the defendants in error as members of the People's Tabernacle Congregational Church of Denver, upon behalf of themselves and other members who might see fit to join, against the plaintiffs in error, to have cancelled and held for naught a certain deed from the church organization to Thomas A. Uzzell, its former pastor, others to his heirs, and subsequent conveyances for Lots 4, 5 and 6 in Block 79 East Denver, for an accounting of rents, profits, etc. Trial was to the court which found that there was no consideration for these deeds, and ordered them cancelled, etc.

The record discloses that The People's Tabernacle Congregational Church of Denver was incorporated February 9, 1884, as a religious organization; that the Rev. Charles Uzzell was its first pastor and for about eighteen months, when he was succeeded by his brother, the Rev. Thomas A. Uzzell, who continued with it as such for about twenty-eight years, and up to the time of his death in 1910; that in March, 1900, the church acquired title to Lots 1 and 2 in Block 79, East Denver, being a corner on Twentieth and Lawrence Street; that in July, 1900, it acquired the title to Lots 3, 4, 5 and 6 in Block 79, being the adjoining lots to the corner; that the funds for the purchase of other lots theretofore owned by the church, as well as these, and for the erection of the church edifice upon the three corner lots were secured, a small part from the members, the balance and principal amount by donations from public spirited citizens through the efforts of the pastor, the Rev. Thomas A. Uzzell, who in this manner financed the organization. While there is testimony tending to show that many of those who made large contributions gave at his solicitation, upon account of their appreciation of his work, and confidence in him, regardless of the denominational character of his church, and without any strings upon his use of it, there is other testimony which establishes that during this period he was known and understood to be a congregational min-

ister, and this church a congregational church. The record discloses that when purchased, the lots in controversy adjacent to the three upon the corner on which the church building was constructed, had some small residences thereon which were later changed or rebuilt, and turned into store buildings; that they were rented and the revenues used for church purposes, the same as other church funds. The testimony further shows that during this long period of Parson Uzzell's pastorship, he received as a salary various amounts ranging from fifty to one hundred and fifty dollars per month, but for the greater portion of the period much less than the larger amount; that the moneys for the payment of this salary, as well as for the other expenses, were raised principally by his efforts, to a large extent from outside sources; that the amounts varied, depending upon the ability and willingness of the people to give. The testimony shows that for several years of this period, while continuing his labors as pastor, he held a county office, during which period he received no salary from the church.

In the Fall of 1910, the pastor was taken to a hospital in which he passed away. While at the hospital the chairman of the board of trustees, at their direction, called upon him to ascertain what they could do for him financially, it being generally known that he was possessed of but a small amount of this world's goods. His wife had preceded him to the land beyond; at this time he had three grown children, as well as a minor daughter, Helen, about fourteen years of age. The result of this and other interviews between the trustees and the pastor resulted in his sending a communication to the congregation as follows:

St. Luke's Hospital,
12:35 P. M., Dec. 5, 1910.

To the board of trustees and the members of The People's Tabernacle Congregational Church of Denver, it comes to me that you are to have a meeting on Wednesday night, Dec. 7, looking after my temporal support in the future.

At first it looked as if I might be called over to the other side very soon, leaving little or nothing for Helen's education. It was then that I thought a legacy might be allowed to her by the church, to help her in her education.

Later I improved, then it looked as though I would recover and live for some time. Then it occurred to me that if a legacy was made at all it should be made to me. For if after recovery I should not be strong enough to work, I would have something to fall back on in old age and decrepitude.

It seems you do not know my position well. With the three lots numbers 5-6-7 deeded to me I would have no fear for Helen or myself.

I have recently been talking with some of the business men who gave me this money for this property, and they tell me it was never their intention to give to the organization. They knew no organization they said, they were giving this money to Parson Uzzell, to build a house in which to preach to the poor. And they expected me to use it for that purpose, and afterwards keep enough to sustain myself, and the balance to go into some benevolent institution in the city. We won out solely on this in the old church, as you all know.

Now if it is your real object to make my last days pleasant and happy then turn over to me the three lots to properly sustain me when I am unable to work.

Every member of the board has solemnly promised to carry out my desire in this particular. I now make my desire known unto you, and this is all I can do.

Yours truly,<br>Thomas A. Uzzell."

The record shows, as stated in this letter, that a meeting of the members of the church had been called for the purpose of making some financial provisions for the parson. At this meeting a resolution was offered providing for the payment of $60.00 a month to his minor daughter, Helen,

for twelve years and making it a lien upon the church building, etc. An amendment was made that in lieu thereof the church deed the adjacent Lots 4, 5 and 6 in Block 79, East Denver to Parson Thomas A. Uzzell, as requested in his letter. This amendment was carried by a vote of twenty-eight for, to sixteen against. The record further discloses that the president of the board did not carry out the wishes of the church as expressed at that meeting, but on or about December 15th, 1910, caused to be executed and delivered a deed for two of the lots as called for in the resolution; that Parson Uzzell passed away on December the 17, 1910; that soon thereafter his heirs took possession of these two lots and have retained them ever since. Nothing further appears to have been done until the 28th of January, 1914, at which time at a meeting of the members of the congregation by a vote of sixty-four to forty-one, a resolution was adopted reading in part as follows:

"Whereas, on or about the 7th day of December, A. D. 1910, at a special meeting of the members of this church, regularly called, it was by a large majority voted that this church deed to Parson T. A. Uzzell lots number four (4), five (5) and six (6), in block number seventy-nine (79), East Denver; and

Whereas, the then president of the Board of Trustees wrongfully and in violation of his trust refused to execute a deed to said three lots, but did execute a deed to lots five (5) and six (6), in block number seventy-nine, East Denver; and

Whereas, the services rendered to this church by the said Parson T. A. Uzzell were of great value and he at no time received anything like adequate compensation therefor, and it was for this reason that said three lots were ordered to be deeded to him; and

Whereas, in all fairness, justice and equity all of said three lots should have been deeded to said Parson T. A. Uzzell, the same to be his sole property, and this church has no claim, right, title or interest to said three lots, or any of them."

This is followed with a ratification of their former acts and instructions to the board of trustees to execute a deed for all three lots to the heirs of Parson Uzzell, pursuant to which deeds were issued accordingly. The heirs then took possession of the other lot. Thereafter, and on December the 14th, 1915, this suit was brought by certain of the members, and also in the name of the church organization to cancel these conveyances, upon the ground that those to the parson and his heirs were without consideration; also for the alleged reasons that the notices of the meetings, etc., at which their execution was authorized were not sufficient; that their execution was a breach of trust, etc. The court found that the deeds were given without consideration, and for that reason ordered them set aside.

The plaintiffs in error contend that the defendants in error have no right, authority or capacity to maintain this action. We will not pass upon this question, but prefer to go to the meat of the contention. There is no material conflict in the testimony and in our opinion the court erred in not holding that there was a sufficient consideration for these deeds. The record discloses that Parson Uzzell had been with this society for about twenty-eight years; that he was the center of its church life and activity for over a quarter of a century; that he participated mildly in its prosperity, and shared alike with it and the congregation in their adversities; that he built it up from practically nothing at the beginning of his stewardship, to a good-sized, healthy congregation, both spiritually and financially, and that at the time of his death he left it with a church building on three lots, worth fifty thousand dollars, clear of incumbrance, with no debts of any consequence, and money in its treasury to the amount of about $1,700.00; that the six lots cost about $13,000.00; that the church edifice erected on the three corner lots cost about $42,000.00; that of this only about $1,000.00 was contributed by the congregation, the balance in large amounts from public spirited citizens who, appreciating the parson's noble work and hav-

ing confidence in him, contributed liberally to the cause in which he was engaged. We simply state these matters in order to call attention to the fact that the question of consideration in a case of this kind cannot be determined by the ordinary rules applicable to private stock corporations operating for the benefit of their stockholders. The record shows that the trustees of the church, and that portion of its membership then taking any special interest in the matter were of the opinion that the organization was indebted to the parson more than it could ever repay him, and that mindful of the great work he had done for them and realizing that he had never been compensated in anything like the amount which his services were worth, that they wanted to do something for him in the same unselfish and generous spirit which had always marked his association with them; that they first discussed the payment to his daughter, Helen, of $60.00 per month for twelve years with a mortgage on the church property to secure it. It appears that this was not satisfactory to the parson, and that the ultimate result of these conferences and their meetings was the execution and the delivery of the deeds intended in so far as the lots would go in payment for the services theretofore rendered in his labor for the church and the cause, without which it would have no excuse for existence. In our opinion all of these facts disclose a sufficient consideration for the deeds.

*Neal & Son v. Stanley,* 17 Ga. App. 502, 87 S. E. 718; *Viley v. Pettit,* 96 Ky. 576, 29 S. W. 428; *Spencer v. Potter's Estate,* 85 Vt. 1, 80 Atl. 821; *Jilson v. Gilbert,* 26 Wis. 637, 7 Am. Rep. 100; *Chadwick v. Knox,* 31 N. H. 226, 64 Am. Dec. 329; *Glenn v. Savage,* 14 Or. 567, 13 Pac. 442; *Boothe v. Fitzpatrick,* 36 Vt. 681; *Winefield v. Feder,* 169 Ill. App. 480. This is specially true in cases like this where the compensation has already been paid or otherwise provided for in writing.

*In re Sutch's Estate,* 201 Pa. St. 305, 50 Atl. 943; *Cornell v. Vamartsdalen,* 4 Pa. St. 364; *Gleason v. Dyke,* 39 Mass.

(22 Pick.) 390; *Goulding v. Davidson,* 26 N. Y. 604; *Jackson v. Cleveland,* 15 Mich, 94, 90 Am. Dec. 266.

The complaint concerning the irregularity of the calls for the meetings is not well taken.  They appear to have been in compliance with the constitution, by-laws or manual of the church as it is termed, for which reason we think it sufficient.  Sec. 865, Rev. Stats., 1908, is not applicable to religious organizations.  There being no statutory method provided, a compliance with their rules and regulations in this respect is sufficient.

*Edgerly v. Emerson,* 23 N. H. 555; *State v. Smith,* 48 Vt. 266.

The contention that the deeds were made in violation of a trust was not passed upon by the trial court.  On this question it is only necessary to call attention to the facts that the conveyances to the church contain no declaration. of trust; that the lots in controversy were not used for church or religious purposes, and while there may have been in the mind of the parson at the time they were purchased an idea for their ultimate use for bath house, gymnasium or other purposes as testified to, the evidence discloses that during the entire period the church held them, they were used for commercial purposes and the funds received therefrom applied to church purposes.  In such circumstances had they been sold and the money used to carry on the religious work, no one could successfully contend that there was a breach of trust.  This, in substance, was what was done, viz., they were conveyed to Parson Uzzell and his heirs in part payment for what the congregation considered was its debt incurred in carrying on the religious work for which the organization was incorporated.  In *Lyons v. Planter's Loan and Savings Bank,* 86 Ga. 485, it is held that unless made exempt by statute a church building can be sold for the payment of the debt of the organization, including the minister's salary.  In *Eggleston v. Doolittle,* 33 Conn. 396, it is held that the church building can be sold by the congregation for the payment of its debts.

The judgment will be reversed and the cause remanded with directions to dismiss the action.

*Reversed.*

Mr. Justice Bailey and Mr. Justice Allen concur.