# WASHINGTON COUNTY.

## March Term, 1840.

Present, Hon. STEPHEN ROYCE,
"      ISAAC F. REDFIELD, } *Assistant Justices.*
"      MILO L. BENNETT,

## Anson Harrington *v.* Solomon Wells.

The vendee of personal chattels is not at liberty to rescind the contract, merely upon the ground of inadequacy of price. If the vendor was guilty of fraud in the sale, the vendee may, upon discovering it, rescind the contract. But the question of fraud must, in such case, be determined by the triers of the fact.

If the parties have stipulated the rule of damages, it must be adhered to, although it may do manifest injustice.

If one agree to pay a certain sum in specific or collateral articles, worth much less than the agreed price, but fail to fulfil, he is liable for the sum stipulated.

If one agree to pay a certain sum in specific property, which he represents to be, at the time, at a certain place, when, in fact, he has no such property; and the remainder of an entire sum in an order for work, the promissee, upon discovering such misrepresentation, is not bound to de-

WASHINGTON,   mand either the property, or the order; but may sue presently for the
  *March*,     breach of the contract.
   1840.

Harrington      THE plaintiff commenced an action against the defendant.
   *v.*       The defendant filed a declaration on book to recover against
  Wells.      the plaintiff a balance due the defendant, that it might be
pleaded in offset to the plaintiff's claim. Judgment to ac-
count having been rendered by the county court in the de-
claration on book, an auditor was appointed, who afterwards
reported, that the defendant, Wells, presented an account a-
gainst the plaintiff Harrington, for a chaise and harness, in
relation to which the auditor found that Harrington was at
Wells' house, in Middlesex, in July, 1831, at which time
Wells proposed to sell Harrington the chaise and harness in
question and to have them applied on a note which the lat-
ter held against the former; that Harrington refused so to
purchase, saying, that if he did purchase, Wells must take a
sleigh which Harrington had at one Taplin's, in Montpelier;
that Wells called the chaise and harness worth $55, and
Harrington called the sleigh worth $50, and said if it was
not worth that sum, he would make up the deficiency; that
the parties finally agreed that Wells should take the sleigh
at Taplin's and also an order on Taplin, who was a wheel-
wright, for five dollars, payable in his work, and that Har-
rington should take the chaise and harness; that Harrington
then took the chaise and harness away; that in one or two
days afterwards, in the absence of Wells and without his
consent or knowledge, Harrington returned the chaise and
harness and put them into Wells' shed or barn, where they
remained until 1834, when they were taken and sold at auc-
tion, by the collector of Middlesex, in payment of taxes a-
gainst Harrington; that when Wells ascertained that Har-
rington had returned the chaise and harness, he gave his
family directions not to use either, as they were not his pro-
perty, and that it did not appear that they were used by
Wells or his family after such return; that Harrington, af-
ter having so returned the property, treated it as his own
so far as this,—he offered to sell it, saying, at the same time,
that it was at Wells' and that he had it of Wells; that there
was no evidence tending to show that Harrington at any
time in the spring, summer or fall of 1831, was the owner

of a sleigh, but, prior to the contract between the parties, Harrington had a conversation with Taplin about purchasing a sleigh, the price of which was $25, but the purchase was not completed and afterwards Taplin sold the sleigh to another person.

The auditor further found that Wells did not go to Taplin's to enquire for or see the sleigh until November, 1831, previous to which time Taplin had sold the sleigh which Harrington talked of purchasing; that it was not known that Taplin was then at home or seen by Wells; that Wells never called on Harrington for the five dollar order nor for the sleigh. The auditor also found that the value of the chaise and harness, at the time of the sale of it to Harrington, was seventeen dollars, and that the value of the sleigh, which Harrington talked of purchasing of Taplin, was $25. If the court should be of the opinion, from the facts found by the auditor, that Wells could maintain this action to recover what he called his chaise and harness worth, at the time of the contract, then the auditor found for him to recover $75,90; but if Wells was only entitled to recover the value of the property, then the auditor found $26,73 due to him to balance book accounts.

The county court decided that Wells was entitled to recover the price of the chaise and harness, agreed upon by the parties, and rendered a judgment accordingly.

The plaintiff, Harrington, excepted to the decision of the county court.

*A. Spalding*, for plaintiff.

I. The report discloses a special contract, which is not a proper subject of book charge. Swift's Dig. 582. 1 Aik. R. 73. 2 Vt. R. 326.

II. No demand was ever made on Harrington for the sleigh.

It is contended that it was incumbent upon Wells to demand the sleigh of Harrington before he would be justified in bringing his suit.

III. Wells neglected to call on Taplin in a reasonable time for the sleigh. Neither did he give notice to Harrington, upon his not receiving it, which, it is contended, amounts to a waiver of the contract on his part.

Where a person has paid money upon a contract, which

has not been performed, he may either affirm thé agreement by bringing a special action of assumpsit thereon for general damages, or he may disaffirm it, and recover back the money so paid, by action of *indebitatus assumpsit* for money had and received.   Com. on Con. 70.   2 Burr. 1010.

IV.  The damages, if any, should be the  value of the property at the time of the sale.

In this case, Wells claims to recover more than three times the just value of the property, which is certainly contrary to  equity and good  conscience.   3 N. Carolina R. 278.

If a contract be unconscionable, the court will render such damages as may appear reasonable, without being bound by the terms of the contract.   *Cutler* v. *How*, 8 Mass. R.  257.   *Cutler* v. *Johnson*, do.  266.   *Jestons* v. *Brooke*, Cowp. 793.   *Baxter et al.* v. *Wales*, 12 Mass. R. 365.

*Wm. Upham,* for defendant.

I.  It is insisted  by the defendant, that the  record shows no error in the  decision of the court below.   The auditor has reported that the defendant called his chaise and harness worth $55, and that  he sold them  to the  plaintiff for that sum, and agreed  to receive in  payment a sleigh which  the plaintiff  said he had  at one Taplin's in Montpelier, worth $50, and the balance of  $5, in an  order on Taplin payable in his work.   The parties having so contracted, the defendant is entitled to  recover  the price agreed upon.

2. The chaise and harness were properly charged on book by the defendant, and he has  pursued his legal  remedy to recover the sum which the plaintiff agreed to pay for them.

It is well settled that a special agreement respecting the mode of payment will not  exclude the  party from the right to charge, on book, the articles sold.   Swifts Ev. 84.   1 Swift's Dig. 582, 729.   *Fay et al.* v. *Green*, 2 Aik. R. 386, 389.   *Boardman* v. *Keeler, et al.*, 2 Vt. R. 65.   *Fry* v. *Slyfield*, 3 Vt. R. 246.   *Blish et al.* v. *Granger*, 6 Vt. R. 340.   *Way* v. *Wakefield*, 7 Vt. R. 223.

The opinion of the court was delivered by

REDFIELD, J.—From the auditor's report in  this case, we cannot consider the  contract concerning the chaise, as any

thing else, but an absolute, unconditional sale. If so, the plaintiff had no right to return it and thus rescind the contract, unless the defendant was guilty of fraud in the sale, which was not found by the auditor. *Thornton* v. *Wynn,* 12 Wheaton's R. 183, S. C. 6 Pet. Cond. R. 508. *Strut* v. *Blay,* 2 Barn. & Adol. 456, S. C. 22 Eng. C. L. 122.

2. We do not see how the plaintiff can reduce the defendant's claim for the chaise to a mere *quantum valebat.* The defendant asked fifty five dollars for the chaise and the plaintiff agreed to give that sum, in a sleigh worth $50, and an order for $5. If the sleigh was not worth $50, plaintiff agreed to make up the deficiency. How then can the recovery be reduced to the actual value of the article? Surely not unless we can substitute our own notion of justice in the place of the contract of parties. A contract for ten bushels of oats on a given day, if not fulfiled, is good only for the value of the commodity, at the time and place of delivery. But a contract for ten dollars, in oats at one dollar a bushel, if not fulfilled, is good for ten dollars, because the parties have stipulated the damages.

3. Was the defendant bound to make demand of the sleigh at Taplin's or of the order of the plaintiff? We think not. The plaintiff sold the defendant a sleigh, then in existence, not one thereafter to be made. He had no such sleigh and this was well known to himself at the time of the contract. This was such a fraud as would excuse any demand, which must of course prove unavailing. *Bowdell* v. *Parsons,* 10 East, 359. If the plaintiff was not in a situation to perform the contract, as stipulated, the defendant was not bound to accept of a part performance, but might sue for the stipulated price of the commodity sold.

4. Was the sale at such an unconscionable price as to justify the plaintiff in rescinding it? Not unless there was evidence of fraud. And if so, the question must have been decided by the triers of the fact, and not by the court. *Brown* v. *Sawyer,* 1 Aikens' R. 130. It is very questionable indeed, whether mere inadequacy of price, will justify even a court of equity in setting aside a contract of sale. *Wendell* v. *Van Rensselaer,* 1 Johns. Ch. R. 344. *Barrow* v. *Rhinelander,* Id. 550. That has sometimes indeed been

WASHINGTON, done, for that reason alone.   It is very certain, however, if
March,
1840.      the thing be understandingly done, mere inadequacy of price
_____ will never excuse the performance of a contract.
Harrington                                            Judgment affirmed.
v.
Wells.