## JOSEPH L. GIDDINGS v. BENJAMIN GIDDINGS'S ADMINIS-TRATOR.

### Delivery of Promissory Note. Contract. Consideration.

Defendant's intestate, wishing to pay to each of his three nephews a third part of their father's interest in his mother's dower estate, which the intestate had had and enjoyed, and for which their father had never made demand, and recovery of which had in consequence become barred by the Statute of Limitations, and also to make to each a gift in addition thereto,—drew, pursuant to previous declarations of a purpose so to do, to which the brother and nephews had assented, three promissory notes, payable one to each, in one year after his death, intending to leave them in the hands of some third person, subject to his own control, to be delivered after his death, if he should not retake them or otherwise direct. He put the notes into an envelope, which he sealed, addressed to "Henry F. Giddings [one of the nephews], of Ellisburg, Jefferson County, N. Y., and others, in care of Barnes Frisbie, Esq., of Poultney," and delivered to said Frisbie, with directions about its custody. Frisbie indorsed the substance of the directions on a wrapper that he put around the envelope as follows: "Letter left in my care by Benj. Giddings, to be handed to Mr. [meaning Benjamin] Giddings, if he calls for it; otherwise not to be opened in his life-time." The intestate died without ever having called for the package otherwise than to inquire for its safety. After his death, Frisbie opened the envelope, found the notes, and delivered them to the respective payees. *Held*, in an action on one of the notes, that Frisbie having taken the note as agent of the payee, subject to the maker's option of recall, and held it as trustee of the payee, and having completed delivery on the death of the maker, in accordance with the directions and the intention of the parties, with the option of recall unexercised, the delivery took effect by relation as of the time of the original deposit.

Defendant sought to avoid the note on the ground of want or inadequacy of consideration. It appeared that the intestate's brother originally had a legally enforceable claim for his distributive share in his mother's dower estate; that the intestate had possessed and enjoyed his interest with his tacit consent; and that the note was for more than plaintiff's share in his father's interest. *Held*, that the benefit received by the intestate by permission of his brother was a consideration; that the outlawed, but otherwise legal, antecedent indebtedness was also a consideration; and that the fact that the original claim was less than the note was not such inadequacy as would afford a defence to the note, as any consideration, however small, that was free from fraud, mistake, &c., would sustain the most onerous obligation.

Defendant contended that if plaintiff could recover, he could recover only one third of the actual value of his father's share at the time the note was given. *Held*, that under the circumstances, *q. v.*, as defendant could show neither fraud in procuring the note for the sum named, nor the sum to be deducted, he was entitled to no abatement from the sum for which the note was given.

This was an appeal from probate. The case was referred, and the referee reported in substance as follows:

In 1815, Benjamin Giddings, of Poultney, died, leaving a widow and several children, among whom were Damon, the defendant's intestate Benjamin, and Joseph, who had become of age in 1809, taken an advancement from his father, and gone to reside in Ellisburg, Jefferson County, N. Y. Dower was assigned to the widow, and the remainder of the estate was divided among the heirs, a small part of the home farm being set out to Joseph for his share after deducting the advancement. In 1842 the widow died, and the brothers became entitled to possession of their respective shares of the dower. Joseph's share, as near as can now be ascertained from the evidence produced, was then worth $152.83. Up to that time, and until 1844, Benjamin and Damon occupied the farm, including the share of Joseph. In 1844, Benjamin bought out Damon, and continued to occupy alone, and gained title to Joseph's share either by purchase or adverse possession. Joseph had three sons, the plaintiff Joseph L., Benjamin F., and Henry F. It is claimed by the plaintiff that Joseph was never paid either for the share set out to him or for his share of the dower. But it is not found, against the presumption of payment arising from lapse of time, that he was not paid for the share set out to him. But from evidence of oral statements and acknowledgments made to him by Benjamin in 1867, and to his sons then and afterwards, and in connection with the making of the notes hereafter mentioned, without evidence of any previous acknowledgement or promise, it is found that he had not been paid for his share of the dower, and that Benjamin considered that he ought to make good to him, or to those who would have his estate, what he ought to have had therefor, which, with interest, if it was purchased, and with fair pay for its use if it was not, would, on January 1, 1866, amount to $375.20, but for which Joseph then had no legal claim on account of the Statute of Limitations. In consideration thereof and of the fact that Joseph's sons would be his heirs, and calculating to have each receive one-third of what should be paid on account of it, and for the purpose of making a gift beyond that to each of them to take effect after his own death, Benjamin made three promissory notes for $500 each, payable one to the plaintiff, and one to each of the plaintiff's two brothers, in one year after his death, intending to leave them in the hands of some third person, subject to his own control, to be delivered after his death, if he should not retake them or otherwise direct. He informed Joseph and each of his sons of the notes and of his purpose in regard to them, and they all assented to the arrangement. After that he put the notes into an envelope which he sealed, addressed to

" Henry F. Giddings, of Ellisburg, Jefferson County, N. Y., and others, in care of Barnes Frisbie, Esq., of Poultney," and delivered to said Frisbie, at Poultney, with directions about the custody of it, which Frisbie indorsed correctly, in substance, on a wrapper that he put around it, in these words : " Letter left in my care by Benj. Giddings, to be handed to Mr. Giddings if he calls for it ; otherwise not to be opened in his life-time." The Mr. Giddings mentioned in the indorsement was Benjamin, the intestate. Joseph died in 1868. Benjamin inquired of Frisbie about the safety of the package, but did not otherwise call for it. He died in 1873 ; and after his death Frisbie opened the envelope, found the notes, and delivered them to their respective payees, the plaintiff and his brothers. There was no consideration for the notes other than such as appears from the above statement. Henry F. and Benjamin F. have each a suit pending on their respective notes. Both suits were referred to this referee, and were tried at the same time with this, but as separate cases. On the trial of this case the plaintiff offered in evidence the deposition of Henry F. and the testimony of Benjamin F., to prove the above mentioned statements and acknowledgments of Benjamin, to which the defendant objected. The objection was overruled, and the evidence admitted, and therefrom said statements and acknowledgments were mainly found. The plaintiff testified to similar statements and acknowledgments in the other cases, subject to like objections. On these facts the rights and liabilities of the respective parties are submitted to the court. If the plaintiff is entitled to recover the whole note, there is due on it, reckoning interest after one year from the death of the intestate, $620.33 ; if one third of said sum of $375.20, then, reckoning like interest, $155.16.

At the September term, 1877, Rutland County, the court, Ross, J., presiding, rendered judgment on the report for the smaller sum ; to which both parties excepted.

*Levi H. Brown, J. B. Beaman,* and *Prout & Walker,* for the plaintiff.

The claim presented was a negotiable instrument given for value. *Prima facie,* the plaintiff's case is complete. Story Prom. Notes, 53 ; Chit. Bills, 10, note 1, 67, note ; *Jerome* v. *Whitney,* 7 Johns. 321 ; *Jackson* v. *Alexander,* 3 Johns. 484, 493 ; *Smilie* v. *Stevens,* 39 Vt. 315 ; *Capron* v. *Capron,* 44 Vt. 410 *Bryant* v. *Pember,* 45 Vt. 487.

There was not a failure of consideration.  An outlawed debt, like a debt discharged under a bankrupt law, is a good consideration for an express promise.  The subject having been matter of adjustment among the parties, any actual indebtedness sustains the entire note.  *Johnson* v. *Titus*, 2 Hill, 606 ;  *Oakley* v. *Boorman*, 21 Wend. 588 ;  *Worth* v. *Case*, 42 N. Y. 362 ;  *Earl* v. *Peck*, 64 N. Y. 596.  Cases like *Holley* v. *Adams*, 16 Vt. 206, and *Smith* v. *Kittridge*, 21 Vt. 238, where the only consideration was " love and affection," are aside from the question.  The written result of the joint assent of the parties to the note is decisive, and cannot be varied by inferences concerning intent.  *Morse* v. *Low*, 44 Vt. 561.

It is true that the promise in cases of this nature may be divisible, and in some instances the plaintiff has been cut down to the actual consideration shown.  *Frost* v. *Frost*, 33 Vt. 639.  But where a note is given, that can be, only in a case where the sum can be precisely ascertained by computation.  *Harrington* v. *Lee*, 33 Vt. 249 ;  *Walker* v. *Smith*, 2 Vt. 539 ;  *Stone* v. *Peake*, 16 Vt. 213.  But here the defendant's claim for reduction is conjectural, and based on estimate merely.

But if the smaller sum of $375.20, which the referee estimates was due and owing for the dower and its use on January 1, 1866, is held to be the limit of recovery, the plaintiff is entitled to one third thereof, being $125.07, with interest from that date, amounting to $212.86.  It is obvious that the referee unintentionally omitted to cast interest upon that sum from the date of the note to the death of Benjamin Giddings.  This future accruing interest, or subsequent use of the premises, was one of the uncertain elements entering into the contract.  It would support the note in full, without more.

A question is made as to delivery.  But how does the case differ from a case of actual delivery to the payee ?  The arrangement was that the notes were to be left by Benjamin in the hands of some third person, " to be delivered after his death."  That was all fulfilled.  *Morse* v. *Slason*, 13 Vt. 296, 307 ;  *Worth* v. *Case*, 42 N. Y. 366.  The conditions of the escrow were, that the maker should not retake the notes, and that he should die.  The

plaintiff was entitled to the note when the conditions were performed. Having obtained it, the delivery relates back to the original arrangement. *Couch* v. *Meeker*, 2 Conn. 302; 1 Parsons Bills, 51. That the deposit was subject to an unexercised option of recall, is not material. *Blanchard* v. *Sheldon*, 43 Vt. 512; *Howard* v. *Windham County Savings Bank*, 40 Vt. 597; *Tucker* v. *Wilson*, P. Wms. 261; *Bergen* v. *Bennett*, 1 Caines Cas. 1; *Hutchins* v. *Hibbard*, 34 N. Y. 24; *Knapp* v. *Alvord*, 10 Paige, 206; *Worth* v. *Case, supra; Morse* v. *Slason, supra.*

*W. G. Veazey* and *J. B. Phelps*, for the defendant.

The plaintiff is not entitled to a judgment for the larger sum, because there is no consideration beyond the smaller sum, and the notes cannot be sustained as a *donatio causa mortis.* *Holley* v. *Adams*, 16 Vt. 206; *Smith* v. *Kittridge*, 21 Vt. 238; *Parish* v. *Stone*, 14 Pick. 198; *French* v. *Raymond*, 39 Vt. 623.

As to the smaller sum, the only consideration is the moral obligation to pay the plaintiff's father for his share of the dower. But admitting that there was consideration to support a note to the father, there is none moving from the plaintiff. The case does not show a promise to pay the father his share of the dower, but only a purpose, in 1867, to give each of the nephews a portion of the property. The fact that one inducement to that was an outlawed indebtedness to the father, does not change its legal character. The note was further lacking in delivery, which is essential to every promissory note. *Gough* v. *Findow*, 7 Exch. 48; *Bromage* v. *Lloyd*, 1 Exch. 31; *Clark* v. *Sigourney*, 17 Conn. 510; *King* v. *Woodbridge*, 34 Vt. 565. Frisbie was a mere depositary of the note for the maker, so that the case presents just the same question as though the package put into Frisbie's hands had been kept by Benjamin, and found among his papers after his decease. If Benjamin had directed Frisbie to deliver the note to the plaintiff after the happening of any event, like the death of Benjamin, and the event had happened, the case would have been different. There is a distinction between the delivery of a deed to a third person as an escrow, and of a note,—a mere promise to pay. In case of the final delivery of a deed the title passes from the time

of the first delivery. But the courts of different states are in controversy as to the effect of the delivery of an escrow, to be delivered after the death of the grantor ; the courts of New Hampshire holding one way, as in *Cook* v. *Brown*, 34 N. H. 460, while the courts of Vermont hold the other, as in *Morse* v. *Slason*, 13 Vt. 296. The authority of Frisbie, as the agent of Giddings, to deliver the notes, ceased upon the death of Giddings. 2 Kent Com. 645 ; 1 Parsons Cont. 71, and cases cited ; Dunlap's Paley Agency, 186 and notes.

The opinion of the court was delivered by

ROYCE, J. This case was heard on the report of a referee, and the court below rendered judgment for the plaintiff, on the report, for the smallest sum named, to which both parties excepted. The facts appear fully from the report, which is made a part of the exceptions.

The first question in the consideration of the case, and the most important in the view we take of it, is as to the delivery of the note in suit. Benjamin Giddings, defendant's intestate, and his brother Joseph, met in 1867, and in conversation Benjamin admitted that he considered he ought to make good to Joseph, or to those who would have his estate, his (Joseph's) share in their mother's dower estate, which had never been claimed by Joseph, and on which the Statute of Limitations had then run, and which the referee finds was worth, on the first of January, 1866, " as near as can now be ascertained," $375.20. In consideration of this, and certain good but not valuable considerations, Benjamin afterwards executed three promissory notes in writing for the sum of $500 each, payable one to each of Joseph's three sons respectively, one year after the maker's death, one of which notes is declared upon as the cause of action in this suit. He intended, as the referee finds, to leave these notes in the hands of some third person, subject to his own control, to be delivered after his death, if he should not retake them or direct otherwise. He informed Joseph and each of the payees of his intention, as above, and they all assented to the arrangement. After that he put the notes into a letter envelope and sealed it up, and wrote on it this

address: "Henry F. Giddings, of Ellisburg, Jefferson County, N. Y., and others, in care of Barnes Frisbie, Esq., of Poultney," and delivered it to Barnes Frisbie of Poultney, at Poultney, with directions about the custody of it, which Frisbie, as the referee finds, endorsed correctly, in substance, on a wrapper that he put around it, in these words: "Letter left in my care by Benj. Giddings, to be handed to Mr. Giddings if he calls for it; otherwise not to be opened in his lifetime." Benjamin did not retake the package; and after his death in 1873, Frisbie opened it, and delivered the notes respectively to the payees named in them—this plaintiff and Henry F. and Benjamin F. Giddings, his brothers.

In *Belden* v. *Carter*, 4 Day, 66, A., having signed, sealed, and acknowledged a deed of certain lands to B., gave the deed, in the absence of B. to C., saying: "Take this deed and keep it; if I never call for it, deliver it to B. after my death; if I call for it, deliver it up to me." A. died without retaking the deed, and C. delivered it to B. Held, that the delivery became complete and took relation back to the first delivery. In *Worth* v. *Case*, 42 N. Y., 362, a note remained in the hands of the payee until the death of the maker, being received and held by him subject to the condition that it should be returned to the maker whenever he might wish it during his lifetime; and the note was held valid. And in *Foster* v. *Mansfield*, 3 Met. 412, it is laid down that if a grantor directs and intends that his deed from and after its execution shall be retained by the scrivener until after the grantor's death and then delivered to the grantee, all of which if afterwards done, the estate vests in the grantee from the time of the execution of the deed. On the authority of these cases, and the principles of law upon which they were decided, it seems clear that had Benjamin handed the notes to Frisbie with specific instructions, as in *Belden* v. *Carter*, *supra*, the delivery would have been sufficient, and on the death of the maker, with the option of recall unexercised, and the actual receipt of the notes by the payees, would have become complete and taken effect back by relation to the time of the deposit of the notes with Frisbie. Were the acts and words of Benjamin and the understanding and treatment thereof by all the parties, as shown by the referee's

findings, equivalent to such a specific direction ?     Upon the part
of the defendant it is contended that the acts of the maker simply
constituted Frisbie a depositary of the notes for him, with no au-
thority to deliver them to the payees in any event ; and that what-
ever ·agency he might have been invested with to deliver them
upon further instructions was revoked by the death of Benjamin.
In order to accept this construction, it is necessary to reject as
meaningless the direction written by Benjamin upon the envelope
containing the notes, and to declare unjustifiable the acts of Fris-
bie based upon his understanding of the·meaning of that direc-
tion.    The policy of the law is to give effect to all the acts and
words of parties, when it can be done without repugnancy.

It is an affair of daily occurrence that notes, deeds, contracts,
and other written instruments, as well as personal property of
every description, are placed in the hands of common carriers,
and often of private carriers, by makers and consignors, with no
instructions concerning their delivery, beyond a direction upon the
outside wrapper in terms precisely analogous to those used in the
address written upon the envelope handed to Frisbie by Benjamin
Giddings.   Such delivery has universally been held to be a de-
livery to the consignee named in such address—*Bull* v. *Sibbs*, 8
T. R. 327 ; *Biggs* v. *Lawrence*, 3 T. R. 454,—though the particu-
lar carrier be not named by the consignee.  *Dutton* v. *Solomonson,*
3 B. & P. 582 ; *Jacobs* v. *Nelson*, 3 Taunt. 423.    And although
the completion of the delivery is defeasible by the consignor by the
exercise of his right of stoppage *in transitu*, yet upon delivery to
the carrier, the property instantly vests in the consignee, and when
the actual delivery to him is fully completed it takes relation
back.   This doctrine is based upon the theory that the consignee,
either expressly or by implication, constitutes the carrier his
agent to receive the property for him.    In the case at bar the
payees of the three notes in terms assented to their delivery to
some third person by the maker, who should hold them subject to
an option of recall by the maker during his life, and then complete
the delivery by handing them over to the payees ;  also that the
selection of such third person should be left to the maker.   In
pursuance of this arrangement Benjamin selected Frisbie·as such

third person, and handed the notes over to him with oral directions concerning the option of recall, and written directions, in the form of an address upon the envelope, in precisely the terms ordinarily used in delivering papers or goods through the agency of a carrier, for their delivery to the payees, in case he should die with the option of recall unexercised. From this direction Frisbie, as evinced by his acts, understood, as any intelligent person would have done, that if Giddings died without reclaiming the packet, he was to deliver it—not to Giddings's personal representatives, in the absence of any instructions written or oral to that effect—but to the parties to whom it was so addressed, viz: " Henry F. Giddings and others." Benjamin did die without calling for the packet, and thereupon Frisbie, for the purpose of ascertaining who were meant by the word " others," assumed to open it, and delivered the notes to the several payees named therein. Had Frisbie been on the eve of a journey to Ellisburg, and had Benjamin handed him this packet without a word, the legal construction of the act would have been : " Deliver this package to the parties to whom it is addressed unless I exercise the right I possess by implication to direct you otherwise before the commission is executed." In this case, the right to countermand the direction upon the envelope was extended by oral reservation to cover the whole period of Benjamin's life ; but the principle remains the same, and the delivery, having been completed, will not be disturbed. There was a perfect consonance in the proved intentions of the parties and the manner in which they were carried out. The precise intention of Benjamin with regard to the notes as found to have been expressed by him to his brother and three nephews was gathered by Frisbie from the oral and written directions of Benjamin to him, and from no other source, and carried out by him to the letter. We find in this whole transaction all the elements which in law are held to constitute a valid delivery through an agent—that Frisbie received the note in suit as agent for the payee, subject to an option of recall by the maker, in like manner as a carrier receives goods as the agent of the consignee; subject to the option of the consignor to stop them *in transitu;* held it as trustee for the payee, and, having completed the

delivery in accordance with the direction upon the envelope and the intention of all the parties, it took effect back by relation to the original deposit with him, and constituted a full and complete delivery on that date.

The defendant seeks to avoid the note upon the further ground of want or inadequacy of consideration. The case shows that Joseph originally had a legally enforceable claim for his distributive share in his mother's dower estate, that said claim was never presented nor enforced by him, and that the interest was possessed and enjoyed with his tacit consent and permission, by Benjamin. "The defendant's having received a benefit by the permission of the plaintiff, is a good consideration." *Davis* v. *Morgan*, 6 D. & R. 42; 4 B. & C. 8. So also is an outlawed legal claim. *Hawley* v. *Farrar*, 1 Vt. 420; *Eastwood* v. *Kenyon*, 11 Ad. & E. 438; *Lee* v. *Muggridge*, 5 Taunt. 37; *Smith* v. *Jameson*, 5 T. R. 603; Esp. N. P. 116; Bull. N. P. 147; *Barlow* v. *Smith*, 4 Vt. 139, 144; *Glass* v. *Beach*, 5 Vt. 172; *Boothe* v. *Fitzpatrick*, 36 Vt. 681. That the consideration for the note was a certain specific outlawed claim, and less in amount than the face of the note, is immaterial in the absence of fraud or mistake upon the part of either of the contracting parties. In *Oakley* v. *Boorman*, it is said: A promise or obligation cannot be defeated in whole or in part, on the ground of the inadequacy of the compensation received for the obligation incurred—the slightest consideration is sufficient to support the most onerous obligation; the meaning of the rule that you may impeach the consideration is only that you may show fraud, mistake, or lillegality in its concoction, or non-performance of the stipulations of the agreement on the part of the promisee. 21 Wend. 588. Contracts entered into by parties knowing their rights, though upon inadequate consideration, will not be set aside in law. *Harrington* v. *Wells*, 12 Vt. 505; *Paige* v. *Ripley*, 12 Vt. 289; nor in equity—*Stephens* v. *Bateman*, 1 Bro. C. C. 22; *Griffith* v. *Spratley*, 1 Cox, 383; *Collin* v. *Brown*, 1 Cox, 428. Family agreements are especially favored in this respect. *Stockley* v. *Stockley*, 1 Ves. & B. 23; being based upon good as well as valuable considerations. *Persse* v. *Persse*, 7 Cl. & F. 279; 1 West, 110.

The defendant claims that if any recovery can be had in this action it should be only for the amount found by the referee to be the actual value at the time the note was given of one third of Joseph's share of the dower interest. It seems to be well settled that to entitle a defendant to an abatement from the sum for which the note was given, in a case of this kind, two things at least must concur, viz., fraud upon the defendant in procuring the note for the sum named, or, at least, a failure of the consideration from the understanding of the parties at the time, and an ability by computation to fix the amount to be deducted. *Walker* v. *Smith*, 2 Vt. 539; *Stone* v. *Peake*, 16 Vt. 213; *Harrington* v. *Wells*, 12 Vt. 505; *Harrington* v. *Lee*, 33 Vt. 249. Both these elements are lacking in the case at bar. No fraud is alleged and no mis-understanding about or failure in the consideration. And it is not found with certainty what the actual value of Joseph's share in the dower estate was at the time the notes were given; nor is it found affirmatively that in the settlement the fifty years' use and the purchase-money of Joseph's distributive share of the farm, for which Joseph once had a legal claim against the estate of his father, and which inured, at least partially, to the benefit of Benjamin, were not taken into consideration as forming a part of the consideration of the notes. Upon such facts as these, it would be extremely hazardous, to say the least, to undertake to reduce written contracts or promises to a *quantum valebat.*

Judgment reversed, and judgment for plaintiff on the report for the larger sum named, with interest and costs; to be certified to the Probate Court.