ZEBEDEE CHURCHILL v. FREDERICK BRADLEY.

*Promissory Note.　Consideration.　Ignorantia juris, etc.*

The surrender of an old promissory note is a sufficient consideration for a new one executed by a surety, although the surety had been released from payment of the old note by the action of the insolvent principal, where both parties knew the substantial facts, but, being ignorant of the law, in good faith supposed the surety was liable for the old note.

ASSUMPSIT in common counts. Heard by the court, December Term, 1885, TAFT, J., presiding. Judgment for the plaintiff.

It appeared that one James Brown, as principal, with E. K. Slack and the defendant as sureties, executed a promissory note for $100, bearing date the 29th day of July, 1884, and payable to the Woodstock National Bank in six months from date.

The note was passed by the said Brown to the bank, and by it discounted at or about the time of its date for Brown, who had the whole avails.

The note remained the property of the bank until September 15, 1884. At that time the principal in the note, agreed with the plaintiff in this action, that he should take up that note and pay the bank, and hold the same as the bank had held it, against the signers as his security.

And accordingly the plaintiff passed the money to Brown, who took it, and went to the bank, and informed the officers that he would take up his note, which he did, the bank understanding and treating it as a payment, and marking the

note as a paid note, and knowing nothing of the arrangement between the plaintiff and Brown.

Brown took the bank note and passed the same to the plaintiff in the evening of the same 15th day of September.

The agreement was entered into between the plaintiff and Brown, and the money advanced by the plaintiff, in good faith, supposing that when he took the note he would hold it the same as the bank was then holding it.

On the 6th day of February, 1885, the plaintiff took the note in suit, then already written and signed by E. C. Brown, wife of the principal on the bank note, to the defendant at his residence in Plymouth, for the purpose of getting him to sign it in place of the bank note.

At that time the said Slack had become insolvent, and this was known to the parties; and the said Brown was insolvent, and his creditors had petitioned the court to adjudge him such, but the defendant was not aware of Brown's insolvency until after he executed the new note.

The plaintiff met defendant at his house and told him that he held the bank note, and that the defendant was holden to pay the same; and the plaintiff in good faith so believed, and the defendant so believed, and signed the note in suit as the plaintiff asked him to do.

The liability of the defendant was on this occasion discussed by the plaintiff and defendant.

The plaintiff did not inform the defendant, nor had the defendant any knowledge that the bank treated and had marked the bank note as paid until after the defendant had signed the note in suit, and the plaintiff had taken it and put it in his pocket.

The bank note has ever since been in the possession of the defendant or his counsel.

The next Saturday after the defendant had signed the new note he went to the plaintiff's residence in Woodstock, and told him he should never pay said note until compelled to.

The suit was brought on the new note.

*W. W. Stickney*, for the defendant.

Whatever amounts to satisfaction of a bill or note by the maker or acceptor operates as an absolute discharge of all parties collaterally liable. 2 Dan. Neg. Inst. 326.

Payment is the discharge of a contract. When a party to a note produces the money and takes it in, he cannot show that he was acting as the secret agent of another, and convert that other into a purchaser. And the payment of a note by the principal discharges the surety. *Eastman* v. *Plumer*, 32 N. H. 238; *Lancy* v. *Clark*, 64 N. Y. 209; *Greening* v. *Patten*, 51 Wis. 150; *Burr* v. *Smith*, 21 Barb. 262; *Chapman* v. *Collins*, 12 Cush. 163.

In *Lancy* v. *Clark, supra*, the court say: "To make a sale or transfer takes two parties, one to sell, and the other to buy."

The fact that the defendant was ignorant that the bank understood and treated its note as a paid note cannot aid the plaintiff, but relieves the defendant from all liability on his new promise.

The indorser of a note, payment of which has not been demanded of maker, is not liable on his subsequent promise to pay, made in ignorance of the fact of no demand. *Low* v. *Howard*, 11 Cush. 268.

A drawer's promise to pay an overdue check without knowing the fact that it had not been duly presented to the bank for payment is not binding upon him. *Kelley* v. *Brown*, 5 Gray, 108; 1 Par. N. & B. 201.

There was no consideration for the new note. 1 Chit. Con. 69, 71; Metc. Cont. 193 *et seq*.

*William E. Johnson*, for the plaintiff.

The exceptions find that every one acted in good faith. If the new note had not been given, the plaintiff could have maintained a suit on the bank note in the name of the bank, and recovered the money paid by him. *Keith* v. *Goodwin*, 31 Vt. 268.

"The fact that a note executed for the purpose of raising money is made payable to a particular bank or individual is merely a formal and not a substantial part of the contract. In such cases it is well understood that the note goes into the market as money, and in exchange for money, to any party who will make the discount."

A different rule prevails in some states. *Bank of Montpelier* v. *Joyner*, 33 Vt. 481.

In *Bank of Newbury* v. *Richards*, 35 Vt. 281, BARRETT, J., says: "A surety is an original maker, and becomes primarily and absolutely liable, as much so as the principal, to any party lawfully holding the paper." *F. & M. Bank* v. *Humphrey*, 36 Vt. 554.

The case is distinguishable from *Eastman* v. *Plumer*, 32 N. H. 238, and *Lancy* v. *Clark*, 64 N. Y. 209, in this, that the note in each of the above cases was due and had accomplished the purpose for which it had been given, and, as is well said in the New York case, being taken after due was taken from the principal and not from the bank and was taken subject to any defences in the hands of the principal.

Those cases may be sound and still the position here claimed in this case correct.

If we are right in our position now taken that ends the case and the judgment below is correct and should be affirmed.

But the note was good against Brown, and its surrender was a sufficient consideration for the new note. 1 Dan. Neg. Inst. s. 185; *Arnold* v. *Sprague*, 34 Vt. 402.

The opinion of the court was delivered by

ROWELL, J.  Treating the bank note as paid as to the defendant, and him as discharged therefrom, it certainly remained good in the hands of the plaintiff as against Brown, the principal; and this raises the question whether the surrender of it by the plaintiff to the defendant constituted a sufficient consideration to sustain the note in suit. We think it did.

It is fairly to be gathered from the case, that when the defendant signed the new note he was aware of all the facts connected with the plaintiff's holdership of the old note, except the fact that the bank had marked it as paid, and this he knew immediately after, when the note was surrendered to him. So on the *occasion* of giving the new note he was aware of all the facts in the premises. The plaintiff made no misrepresentation, but acted in good faith in the matter, and the parties discussed together the question of defendant's liability on the bank note, and both believed him liable, and therefore the new note was taken and the old note given up. Thus it appears that the new note was not given under any mistake of fact, not even of the fact of the old note having been marked as paid, for the defendant knew that on the spot—and it was all one transaction — but did not regard it of sufficient importance to even speak of it, much less, to offer to return the old note and to demand back the new; nor has he ever done that, but still retains the old note, which makes against him. The most that can be said is, that the new note was given in ignorance of the law. But this will not avail the defendant. In *Stevens* v. *Lynch,* 12 East, 38, the drawer of a bill of exchange, knowing that time had been given by the holder to the acceptor, but apprehending that he was still liable on the bill in default of the acceptor, three months after it was due, said he knew he was liable and would pay it if the acceptor did not,—and it was held that he was bound by the promise. s. c. 2 Camp. 332. The universal rule is, *ignorantia juris non excusat,* the word *jus* being used as denoting general law—the ordinary law of the land, and not a private right. 1 Benja. Sales, s. 611. The cases that hold that money paid in ignorance of the law is not recoverable are analogous. *Brisbane* v. *Dacres,* 5 Taunt. 144; *Clarke* v. *Dutcher,* 9 Cow. 674.

Any act that is a detriment to the plaintiff is a sufficient consideration for a promise to pay money. *Williamson* v.

*Clements*, 1 Taunt. 523. It was a detriment to the plaintiff to give up the old note, as it was good against Brown; and the fact that Brown was insolvent makes no difference, for the note must be taken to have had some value, and a small consideration will support a larger promise. *Hitchcock* v. *Coker*, 6 A. & E. 438; CRESWELL, J., in *Southall* v. *Rigg*, 11 C. B. 481, 494; DENMAN, Ch. J., in *Haigh* v. *Brooks*, 10 A. & E. 309; *Harrington* v. *Wells*, 12 Vt. 505.

In *Shortrede* v. *Cheek*, 1 A. & E. 57, the giving up of a note against a third person was held to be a sufficient consideration for a promise to pay the amount of it. PARKE, J., said: "There is no doubt that the giving up of any note on which the plaintiff might sue would be a sufficient consideration." In *Haigh* v. *Brooks*, 10 A. & E. 309, the consideration for the promise was, that plaintiff gave up to defendant his guaranty on behalf of a third person; and it was contended that the guaranty was void for not expressing a consideration on its face, and that therefore the giving of it up constituted no consideration for the promise. But without deciding whether the guaranty could have been made available or not, the Queen's Bench gave judgment for the plaintiffs on the ground that they had parted with something they might have kept and the defendant obtained that which he desired by means of his promise; that both being free and able to judge for themselves, the defendant would not be justified in breaking his promise on afterwards discovering that the thing in consideration of which he made the promise did not possess the value he supposed it did. The Exchequer Chamber affirmed that judgment, both on the ground that the guaranty might have been made good by explanatory evidence, and on the ground—MAULE, J., doubting—that the actual surrender of the possession of the paper to the defendant was a sufficient consideration without reference to its contents.

These authorities are decisive on this point, and the judgment is affirmed.