MARIA FROST *v.* THE ADMINISTRATOR OF JOSEPH FROST'S ESTATE.

*Contract.   Gift.   Consideration.   Jury.   Evidence.*

A promise to give, to take effect only after the decease of the promisor, and not accompanied by any delivery of the promised gift, is void.

The intestate promised the plaintiff to pay her after his death a certain sum per year during the time she should live with him and keep his house; and

the consideration of this promise was, and was understood by the parties to be, in part the services to be rendered him by her, and in part a desire to make her a mortuary gift from motives of affection. *Held*, that it was for the jury to decide what portion of the stipulated sum was to be paid in consideration of her services, and what part was a mere gratuity; and that the plaintiff was entitled to recover the former but not the latter; and that it was error not to instruct the jury specifically to this effect.

*Held*, also, that testimony to show the amount of the intestate's property at the time of such alleged contract was admissible as tending, in connection with other evidence, to show that it was improbable that a man of his means would employ a housekeeper at so extravagant a price, probably for the remainder of his life.

APPEAL from an allowance of commissioners appointed by the Addison county probate court, to receive and adjust demands against the estate of Joseph Frost. The plaintiff filed in the county court a declaration containing the general and money counts only. Plea, the general issue, and trial by jury at the December Term, 1861,—PIERPOINT, J., presiding.

On trial, the plaintiff was introduced as a witness, and her testimony tended to show, that she was the sister of the intestate, and in May, 1852, was residing with a sister in Alexandria, in the State of New York; that the intestate resided in Bridport, and in consequence of a family difficulty, (out of which a suit for divorce and other litigation had arisen,) his wife had left him and gone to live with his son-in-law; that in May, 1852, Frost came after the plaintiff to go and live with him and keep house for him, as he was alone, and that she went accordingly; that nothing was said on the subject of her services or of payment therefor until one day in August, 1853, when he called her into his room and gave her a note payable on demand, for three hundred dollars, with interest, and said to her, " that is for your first year's services, and I will give you a similar note yearly as long as you live with me and keep my house;" that at the same time he said to her, " remember you cannot be benefitted by that note or others I may give you while I live, as it is for your support if you out-live me;" that he further promised to supply her with clothing and spending money while she lived with him, and with means to go and visit her friends when she wished; that in pursuance of this agreement, she went on and kept house for

him until the time of his death, which occurred on the 29th of March, 1858, rendering various services in that capacity; that there was never any other contract or agreement made in relation to her services, but that what she did was in reliance upon that contract.

The note referred to was given in evidence, and it appeared that it had been allowed against the estate of the intestate and paid by the administrator since the appeal in this case was taken.

The defendant gave evidence by the cross-examination of the plaintiff, and by various other witnesses, under objections by the plaintiff, tending to show, that she was at, and for eleven years previous to, the time she went to live with the intestate, residing with a sister and in infirm health, and during most of the time unable to earn for herself more than a very small amount; that before that time she had for many years made her home with the intestate, rendering such assistance as she could in household affairs, and asking and receiving no compensation therefor except her support; that when it was proposed to her to go to live with the intestate in May, 1852, she made no claim for compensation, and never had made any up to the time that he made the promise above testified to, and had entertained no intention of leaving him; that during the whole time she lived with him, both before and after such promise, she had been liberally supplied by him with clothing, necessaries and spending money to her entire satisfaction, with medical attendance when ill, with money to visit her friends in different places, and had been permitted to retain small sums of money occasionally received in his absence from travellers, who called at his house. (where a tavern had formerly been kept,) for entertainment, for no part of all which any charge had been made by him against her; that during the period covered by her claim, his family consisted of himself, herself, a hired girl and hired man, with occasionally another man for short periods; that during his last sickness, and during a previous protracted illness in 1854, his wife and daughters returned and took care of him, but that the plaintiff had the charge and care of the household affairs as at other times; that her services during the entire period, were not worth more than from one dollar and fifty cents to two dollars per week, from which should be deducted the

money and supplies furnished her in addition to her board; and that after such deductions, little or nothing would remain due her; that the plaintiff had never called on the intestate to give her the notes he had promised, nor made any claim upon him during his life under such contract; but that he had more than once said to her that he ought to give her further notes according to agreement, but that it would not injure her claim if he did not, for he had stated the bargain to persons enough so that no one could wrong her out of her pay, and that on these occasions he did not give any reasons why he did not give her the notes.

The defendant further gave evidence tending to prove that the intestate had been, prior to the time of the alleged contract with the plaintiff, in a controversy with his family that resulted in a separation, and under the influence of strongly excited feelings against them, that sometimes manifested themselves, down to a period long after such contract, and from this the defendant claimed that one motive inducing him to make the alleged agreement with the plaintiff was to dispose of his property so that his wife and children should not receive it.

The defendant also offered to show the amount of Frost's property at the time of the alleged contract and at the time of his death, with a view to prove that the contract as claimed, was largely disproportioned to his ability and grossly unreasonable as a compensation for services merely, and also to prove that, if the contract was carried out as alleged to have been made, the plaintiff would receive a much larger share of the estate than either of the three daughters, who are the heirs of the intestate, as showing the reason why he did not finally carry out his proposal to give her the notes. This evidence was objected to by the plaintiff and excluded by the court, to which the defendant excepted.

The plaintiff in reply introduced several witnesses who testified to the admissions of Frost, in his life time, that he was to give the plaintiff three hundred dollars per year, and was to give her notes for it; and that he had given her the note above referred to, for that purpose; and there was no evidence that he had ever denied or objected to it. But no evidence was offered to contradict that of the defendant as to the actual value of the plaintiff's

services, other than the admission of the intestate above stated, except that of one witness, who said " he did not think Frost could have got another woman to take charge of his house as his sister did for the money, (three hundred dollars,) he was so excitable in his temper."

To the admission of the evidence as to the intestate's statements the defendant objected, but they were admitted by the court, not to prove any other or different contract from that testified to by the plaintiff, but as tending to corroborate the evidence of the plaintiff herself, as to the contract stated by her in the opening, and to rebut that offered by the defendant. To this decision the defendant excepted. The plaintiff's evidence also tended so prove that she had faithfully performed the service she agreed to by taking charge of his household and his business when he was absent, as was frequently the case.

The defendant requested the court to charge the jury

1. That there could be no recovery by the plaintiff upon the evidence, inasmuch as upon the plaintiff's showing the agreement had reference exclusively to a provision for the plaintiff by Frost out of his estate to take effect only after his death, and in case she survived him ; and that her services, having been rendered in the expectation of such provision and without any agreement or understanding for payment in any other way, could not be recovered for by action, even if the provision failed.

2. That if the arrangement in question was understood by the parties, and intended by the intestate not only as a payment for the plaintiff's services to the extent of what they might be worth, but as a promise to make a future provision for her out of his estate to an amount exceeding the value of such services, and beyond what the parties considered a compensation for them, the promise, except to the extent of the actual value of the services, would be without consideration and void, and that no recovery could be had in this action beyond the real value of the plaintiff's services.

3. That in determining the question how the parties really understood the promise, whether entirely as an agreement for a future provision irrespective of services, or as intended as a payment for the services to the extent of their value, and an agree-

ment including with such payment a further provision beyond their value as estimated by the parties, regard was to be had by the jury to the situation of the parties, the motive of the defendant and the disproportion (if found to exist) between the worth of the services and the amount claimed to have been promised and the compensation received by the plaintiff besides this contract. And that these circumstances would be evidence to show that something more was intended and understood than a mere payment.

4. That in no event could there be a recovery in this action beyond the amount that the jury should find the parties understood at the time the plaintiff's services to be worth.

The court declined to charge the jury as requested, except as hereinafter stated, but charged in substance as follows: That if from the evidence the jury found that an agreement was entered into between Frost and the plaintiff, such as the plaintiff's evidence tended to show, and should also find that the note for three hundred dollars was given to the plaintiff, and the agreement on his part to give her a similar note each year during the time she remained with him and took care of his household affairs, was designed and understood between them to be a payment for the first year's services of the plaintiff, and an agreement to give her such a note each year for her services during the succeeding years while she remained with him, as compensation and in payment therefor, then the plaintiff would be entitled to a verdict for her services at that rate for each year she remained with him and performed the services contemplated, after the first year, with the interest thereon, from the time of the death of the intestate, (the plaintiff claiming no interest prior to that time.)

That if they should find the agreement to be as above stated, the motives that may have induced Mr. Frost to agree to pay so large a sum for her services, would be immaterial, and would not affect the plaintiff's right to recover, even though the jury should believe from the evidence that the sum agreed upon was more than the services were really worth. Neither would the fact that the money was not to be received by her until after the death of Frost, invalidate the agreement.

But that if from the evidence, the jury should be satisfied that

the arrangement was designed and intended by the parties to be a provision for the future support of the plaintiff by way of gratuity, or as a means of transferring his property to her, or of absorbing his estate, or a part of it, with a view of preventing its going into the hands of his own family, or from any like reason, and not as a real compensation for her services, then the plaintiff could not recover on this agreement.

In determining what the contract was, the jury were instructed that they might take into consideration the condition and situation of the parties and all the circumstances attending the transaction disclosed by the evidence.

Also that if, in view of the foregoing instructions, the jury should be satisfied that no valid and binding contract was entered into between the parties, then the plaintiff would be entitled to recover on the general counts for what her services were really worth, if anything, over and above what she had received in her board, clothing and expenses, and what she had received from customers, unless they were satisfied from the testimony that the amount so received from customers by her, and which Frost permitted her to keep, was a gift or compensation for the extra labor occasioned by such customers, and in such case they would not take that into the account.

To the charge as above detailed and to the refusal to charge as requested, the defendant excepted.

The jury returned a verdict for the whole amount claimed, being three hundred dollars per year for the services rendered after the first year.

*E. J. Phelps* and *Roberts & Chittenden,* for the defendant.

*J. W. Stewart* and *Geo. F. Edmunds,* for the plaintiff.

ALDIS, J. The evidence of the plaintiff tended to show that the sum of three hundred dollars per year sought to be recovered on the contract, was a stipulated compensation for her services. The plaintiff therefore was entitled to the charge which the court gave on this point, that if there was an agreement between the parties by which she was to receive three hundred dollars per year as a compensation for her services, she was

entitled to recover therefor upon such contract at such price. And such agreement being proved, the charge of the court, that neither the inadequacy of the services rendered for the amount of the consideration, nor the motives of liberality and affection which might have induced the deceased to make so large and liberal a compensation to the plaintiff, would impair her right to recover. But this view of the case proceeded wholly upon the ground, that it was the agreement of the parties that the three hundred dollars was to be paid solely and exclusively as a compensation for her services ; and was not to be regarded as a gift or gratuity bestowed upon her with the intention of having her thus receive a share of his estate after his decease.

2. The defendant claimed that his testimony tended to show, that the alleged contract was a mere promise by the deceased, to give her the three hundred dollars per year out of his estate after his decease ; and that no part of it was in reality a compensation for her services.

A promise to give, to take effect only after the decease of the promisor, and not accompanied by any delivery of the promised gift, is void ; because, first, there is no consideration for it, love and affection being no sufficient consideration ; and secondly, because such promises are in the nature of testamentary dispositions of property unaccompanied with those securities against imposition and undue influence upon testators which the policy of the law requires in the making of wills. The county court seems to have regarded the defendant's testimony as tending to establish such a defence, and therefore charged the jury, that if the arrangement was intended by the parties as a provision for the future support of the plaintiff by way of gratuity, or as a means of transferring his estate or a portion of it to her, with a view of preventing it from going to his family, and was not really a compensation for her services, then she could not recover on the contract.

Upon this point, the charge went upon the ground, that the whole three hundred dollars was in the nature of a gratuity and no part of it recoverable.

3. Upon the trial, the defendant claimed, that a third view of the case might properly be taken, viz: that the contract to pay the plaintiff three hundred dollars per year was in part founded

upon her services and to be a compeusation for them, and was in part the promise of a gratuity to be given to the plaintiff, to take effect after his decease, and void for want of consideration as to such part; and that the contract was divisible, so that the plaintiff might recover for whatever was intended as compensation, and not recover anything for the gift. The court declined so to charge, and gave no instructions upon the point whether the contract might be good in part and void as to the rest; but proceeded to tell the jury that if the contract was not valid then the plaintiff could recover the value of her services on the common counts. It is to this omission to charge as requested that the chief exception is here taken.

The defendant's evidence was regarded by the court, and we think properly, as tending to show that the contract *for the whole* three hundred dollars per year was intended merely as a mortuary gift, to take effect after the death of the intestate. If it failed to show that, it might certainly be regarded as tending to show that the contract was in part upon such consideration. The evidence as stated in the bill of exceptions seems to us to tend clearly to establish that very point,— to prove that the deceased desired both to secure the services of his sister as housekeeper at a liberal, generous price, and also to provide for her support by giving her a share of his property after his decease. If, therefore, upon the evidence, the jury might well have found these facts proven, it was the duty of the court to have instructed them as to the effect of such a state of facts upon their verdict, provided the contract was legally divisible. Was it so divisible?

If it was really a contract intended to provide compensation to the plaintiff for her work,— *that and no more*,— it clearly would not be the right of the court or jury to inquire whether the compensation was too large or not. That must be left for the parties to settle. The deceased had a right to be strict, to be liberal, to be lavish, as he pleased. But if that was not what the parties intended and understood as between themselves, if they both understood and agreed that it was partly a contract to pay her for her work, and partly a gratuity to provide for her out of his estate, then the law must adapt itself to such intention. She should recover for all that part that was intended as compensa-

tion ; but why should this entitle her to a legal interest in the gratuity, when under no other circumstances and upon no principle of law could she legally enforce such promise of a gift? If the respective amounts of the two portions of the consideration had been defined in the contract, there could have been no pretence for joining them thus indissolubly. Each portion would then have depended upon its consideration. The parties not having severed these amounts, it must be for the jury upon the evidence to so separate them, and to allow what is just and fair according to the spirit of the contract and the meaning of the parties as compensation for the plaintiff's services. In this manner the legal intention of the parties is carried into effect. If the sentiment of fraternal affection fails of its object, it is only in obedience to the general rule of the law; that a mere moral obligation can not be legally enforced. We think also that the policy of the law in regard to the execution of wills requires the application of the general rule to this case ; otherwise, by incorporating a slight pecuniary consideration into such verbal or written promises of mortuary gifts, estates may be disposed of without wills and in a manner the most favorable to the use of undue influence and fraud.

The case of *Parish et al.* v. *Stone*, 14 Pick. 198, is directly in point. The opinion of Ch. J. SHAW is a most satisfactory exposition of the law, at the time it was given, and we are not aware of any case since decided that contravenes its result.

It is urged in this case that the contract was executory, and the services were to be performed and were rendered afterwards upon the faith of the promise of the testator. True, but upon the faith of the promise, as understood and intended by the parties, and as the jury might have found that the parties intended only that a part of the three hundred dollars per year should be in payment for services, the plaintiff in that event must have performed her services relying for compensation only upon such part. Like any other servant, she might expect a gift which she could not legally claim.

The effect of the omission of the court to charge the jury on this point is quite obvious. They would say, the court tells us that if we find no valid contract proved, we may allow the plain-

tiff on the common counts for the value of her services ; but we do find a contract proved that has at least in part a valid consideration and is, therefore, a valid contract, and we are not told that we may divide the contract; as it is good in part, and we can not sever the good from the bad, we must allow the compensation in full according to the contract. In the absence of specific instructions on this point, we think they would naturally have taken that view of the case, and thus have rendered, as they did, a verdict for the whole amount. In this we think there was error.

It is also the opinion of the court that the testimony to show the amount of Frost's property at the time of the alleged contract was admissible, as tending, in connection with the other evidence, to show that it was improbable that a man of his property would employ a housekeeper at so extravagant a price probably for the remainder of his life. Ordinarily the fact that a man is rich or poor is not admissible as evidence to show that he has or has not made a contract. It is only the surrounding circumstances, viz : the permanency of the contract, which seems to have been intended to last for life, and the apparently gross inadequacy of the service to the compensation, which naturally connect themselves with his pecuniary ability, and make that an element to be weighed in deciding whether the parties must have understood that the three hundred dollars per year was all compensation, or in part a gratuity.

Judgment reversed.