JENNIE L. PORTER *v.* FRANCES P. EVERTS'S ESTATE.

October Term, 1906.

Present: ROWELL, C. J., TYLER, MUNSON, HASELTON, POWERS, and MILES, JJ.

Opinion filed January 14, 1909.

*Contracts—Acceptance of Offer—Form and Sufficiency—Instrument Containing Contract Obligations and an Attempted Testamentary Disposition Construed.*

The acceptance of an offer may be communicated by conduct.

In an action against a decedent's estate founded on a written instrument wherein the decedent proposed to plaintiff that she should have a stated sum of money paid her from the decedent's estate, if plaintiff would refrain from specified acts and give the decedent certain attention during her life, it was immaterial whether plaintiff's acceptance of the proposal was in writing, it appearing that her conduct conformed to the proposal, and that decedent knew that plaintiff had undertaken to perform on her part.

Decedent executed a written instrument providing in the first para-
graph that, if plaintiff would refrain from specified acts, decedent
agreed that a stated sum of money should be paid plaintiff from
decedent's estate. The second paragraph provides that, "if she
promise all this, I agree that this sum shall be paid to her next after
my funeral expenses, and that at the same time and in the same way
snall be paid to her a sum sufficient to pay the three mortgages on
her land." The third paragraph recited that decedent left with
plaintiff certain furniture, books, pictures, clothes, etc., to be
disposed of by plaintiff after decedent's death in plaintiff's own
family and wherever decedent might direct. The fourth para-
graph provides: "I leave this as an obligation to whomsoever shall
settle my estate." *Held,* that the first two paragraphs impose a
contract obligation on decedent's estate; that the instrument is
of two-fold character, the third paragraph being an attempted
testamentary disposition, but that the point of division is at the
end of the second paragraph, making the provision for the pay-
ment of the mortgages a part of the contract obligation.

APPEAL from the decision of commissioners allowing a claim
of Jennie L. Porter presented against the estate of Frances P.
Everts. James A. Merrill, executor, appellant. Declaration,
general and special assumpsit. Plea, the general issue.
Heard on the report of a referee, and exceptions thereto,
at the September Term, 1905, Rutland County, *Watson,* J.,
presiding. Exceptions overruled, and judgment for plaintiff
for $2,065.71, with interest from September 29, 1903. Plaintiff
excepted.

The referee found that on September 29, 1903, there was due
plaintiff, "under the ten dollars per week clause" of the instru-
ment in question, $2,065.71; for insurance, $3.47; for taxes,
$65.86; on the "Dyer mortgage," $3,551.91; on the "Dunklee
mortgage," $575.88; and on the "Marble Savings Bank mort-
gage," $658.85; making, in all, $6,921.68.

*E. L. Waterman,* and *F. S. Platt* for the plaintiff.

The services rendered to Mrs. Everts by the plaintiff and
her family prior to the making of this contract, even if rendered
without the request of Mrs. Everts, were a good and valid con-
sideration for the contract and entitle plaintiff to recover. *Booth*

v. *Fitzpatrick,* 36 Vt. 681; *Giddings* v. *Giddings' Admr.,* 51 Vt.
227.

*Hunton & Stickney* for the defendant.

The instrument in question is a contract to the point ending
with the words "funeral expenses." The part relating to the
payment of the mortgages on plaintiff's land is an attempted
testamentary disposition, and so void. *Frost* v. *Frost,* 33 Vt.
639; *Parish* v. *Stone,* 14 Pick. 198.

HASELTON, J. This was an action of assumpsit. The facts
were found by a referee who reported that there was due the
plaintiff on the 29th day of September, 1903, the sum of
$6,921.68. The county court rendered judgment for the plain-
tiff for $2,065.71 with interest thereon from September 29,
1903. The plaintiff excepted, claiming that she should have had
judgment for $6,921.68 with interest from the date last named.
Whether or not judgment should have been for the larger of the
two sums named depends upon the construction of an instrument
in writing which will presently be set out in full.

Frances P. Everts was a widow lady residing in Rutland.
The plaintiff, Jennie L. Porter, who had a husband and children,
was the niece of Mrs. Everts. The relations between Mrs. Everts
and her niece, and the Porter family generally, were of a very
friendly character and so remained until the death of Mrs.
Everts, September 29, 1903. Mr. Porter, husband of the plain-
tiff, received financial assistance from Mrs. Everts at different
times, and the plaintiff and other members of the Porter family
were in various ways of assistance to Mrs. Everts. In order to
an understanding of the written instrument referred to we
quote from the referee's report as follows: "During her fre-
quent sicknesses the last years of her life, Mrs. Everts was ac-
customed to call upon the Porter family for their care and I find
that the different members of the Porter family always responded
and that on some occasions the plaintiff stayed with Mrs. Everts
night and day. The plaintiff in order to assist in maintaining
her family, canvassed to some extent for books, pictures, and
other articles, and at times rented rooms in her house to families
and for the storage of goods."

In these circumstances Mrs. Everts, on the 9th day of October, 1899, signed and delivered to the plaintiff, Mrs. Porter, the following written instrument:

"Rutland City Hospital, October 9, 1899. I make this contract, or bargain, or agreement with my niece, Jennie L. Porter, because I do not want her to go about the streets, selling pictures, books, or anything else, (as she has done the last two or three years, and as she has commenced to do now, for Mr. Brehmer), and so that I may feel free to call upon her for such services as I may need or want, and which she has for a long time rendered me, I agree to have her paid from my estate, after my death, such a sum as will pay her ten dollars a week during my life, whether I live one year or ten. The first week for which she shall be paid to begin this ninth day of October, 1899, —providing she shall tell Mr. Brehmer tonight that she cannot sell his book, and will promise that during my life, she will not leave Rutland except for a drive during one day and back at night, without letting me know, and that she or some member of her family, shall see or hear from me, at least once in every twenty-four hours as for a long time past, when I have been in Rutland—unless I shall at any time release them from doing so. Also she must promise me that she will not rent or allow to be rented any room or rooms in her home, either to any family or for the storing of any goods without my consent.

If she promise all this, I agree that this sum shall be paid to her next after my funeral expenses, and, that at the same time, and in the same way shall be paid to her a sum sufficient to pay the three mortgages on her land. One held by H. H. Dyer, of $3,200—one held by B. F. Dunklee, of $500.00—and one held by the Marble Savings Bank, of $750.00, together with whatever interest, taxes and insurance may be then due. So that she may have her home free from debt, *if she so chooses.*

I also leave with Jennie, to dispose of, in her own family and wherever I shall direct her, whatever of my furniture, books, pictures, clothes, etc., which shall be in her house or in my possession when I die, and she shall not give up anything belonging to me, to anyone, at anytime, except as I shall direct her, for I want *her* to have, what have been called my 'old duds.'

I leave this as an obligation to whomsoever shall settle my estate after my death, and no sums of money found charged to

Ned or his children are to be deducted from this sum. Neither any bequest I may make.

FRANCES PORTER EVERTS."

The body of the above instrument was written by Mrs. Porter, but Mrs. Everts at the time she signed and delivered it was in full possession of all her faculties.

At the foot of the foregoing instrument is an undated paragraph signed by Mrs. Porter which reads as follows:

"I agree to faithfully perform my part of the above agreement, and that this paper may be destroyed at any time when Mrs. Everts shall consider any of its conditions broken by me, she to be the only judge of my faithfulness, and my possession of this paper to be proof that she is entirely satisfied with my discharge of the obligations imposed upon me.

JENNIE L. PORTER."

The referee does not find when Mrs. Porter signed, nor does he find that she ever signed to the knowledge of Mrs. Everts, but he does find, "that the plaintiff after the ninth day of October, 1899, ceased to go about the streets selling books, pictures, or anything else, and that the plaintiff notified Mr. Brehmer, on the evening of October 9th, 1899, that she could not canvass for him any longer; that the plaintiff did not leave Rutland after October 9th, 1899, without the knowledge and consent of the said Frances Porter Everts; that some member of the plaintiff's family saw or heard from Frances Porter Everts, at least once in every twenty-four hours after said date, and that the plaintiff thereafter rented no rooms in her house to families or for the storage of goods."

In view of the above and other findings of the referee it is immaterial when the plaintiff signed the paragraph beginning: "I agree to faithfully perform." It would be immaterial if she had never signed it. Her conduct from the 9th day of October, 1899, to the death of Mrs. Everts, four years afterwards, was a full performance of the things required of her in the proposal of Mrs. Everts, and carried with it an acceptance of the proposal, and a promise to perform. The close relations of the aunt and niece continuous up to the time of the death of the former, the direct way in which the things the niece did and refrained from doing related to and affected the aunt, the fact that on two or three occasions Mrs. Everts made

remarks to the effect that she had made provision whereby Mrs. Porter would be well paid showed that Mrs. Everts knew that her proposal had been at least tacitly accepted, and that Mrs. Porter had undertaken to perform on her part and was carrying out her undertaking; and with the other facts found compelled the finding of the referee as to the amount due the plaintiff. It is quite elementary that the acceptance of a proposal may be communicated by conduct. Wald's Pollock on Contracts, p. 9. The undertakings on the part of Mrs. Everts embodied in the first and second paragraphs of the instrument signed by her became and are contract obligations binding upon her estate. The third paragraph of the instrument relating to the furniture, books, pictures, clothes, etc., of Mrs. Everts, things "left with" Mrs. Porter, is no part of the contract, although it throws some light upon the relations of Mrs. Everts and Mrs. Porter and the probability of the contract above stated. That paragraph is in the nature of an attempted mortuary disposition of things which she desired no stranger to her affections to have or use or handle, and while it shows, as is argued for the executor, that the written instrument in question is of a two-fold character, it shows with equal clearness that the point of division is at the close of the second paragraph. It is argued for the executor that the point of division should be deemed to be at a comma after the phrase "funeral expenses" in the second paragraph. But the provisions of the first paragraph and of the second are all inseparably bound together in a clear expression of a proposed contract natural and proper to be entered into; and to dismember the second paragraph, and treat the promise of money to pay the mortgages otherwise than "in the same way" that the promise to pay $10.00 a week is treated, is something which no rule of interpretation permits us to do. By the contract Mrs. Everts exacted much, no one can say otherwise, and as became her, she agreed to pay generously.

It is said in the brief for the executor that the paper signed by Mrs. Everts is a suspicious document, and that the fact that the body of it is in the hand-writing of Mrs. Porter stamps her as a schemer, and "the concoction of her scheme" is mentioned. She is spoken of as "inducing" Mrs. Everts to sign. But there is absolutely nothing in the case as presented to this Court to warrant these expressions. The final paragraph of the agreement reads: "I leave this as an obligation to whomsoever shall

settle my estate after my death, and no sums of money found charged to Ned or his children are to be deducted from this sum. Neither any bequest I may make." It is argued that this indicates that the provision of money to pay the mortgages was in the nature of an attempted testamentary disposition of property. But its bearing is the other way. The sum from which nothing was to be deducted obviously included both the aggregate amount of the $10.00 a week, for none of this was to be paid in the lifetime of Mrs. Everts, and the amount necessary to pay the mortgages. All this, as Mrs. Everts made clear, was to be, a contract obligation binding upon her estate, and the language used was well calculated to prevent any such contest as is here made.

*Judgment reversed, and judgment for the plaintiff for $6,921.68 with interest thereon from September 29, 1903, and costs of suit. Let the judgment be certified to the Probate Court.*