# CASES ARGUED AND DETERMINED

## IN THE

# SUPREME COURT OF VERMONT.

KATE SPENCER *v.* JARVIS T. POTTER'S ESTATE.

May Term, 1911.

Present. ROWELL, C. J., MUNSON, WATSON, HASELTON, AND POWERS, JJ.

Opinion filed July 31, 1911.

*Motion for Directed Verdict—Requisites—Ambiguous Written Contracts—Construction— Extrinsic Evidence—Admissibility —Past Consideration—Sufficiency—Gifts—"Give"—General Objections to Evidence—Sufficiency—Instructions— Witnesses —Competency—Claimant's Testimony Against Decedent's Estate—P. S. 1589.*

A motion for a directed verdict must state the precise grounds on which it is based, and no others will be considered on review.

A promise made on a past consideration effects a binding contract, where the consideration, though without request, and so creating no legal obligation, moves directly from the promisee to the promisor and inures directly to his benefit.

Where a written instrument is ambiguous on its face, the court, in determining its meaning, should look to the circumstances of its origin and execution and the subject-matter of the transaction.

Though the primary meaning of the word "give" is to transfer ownership or possession without compensation, it has the secondary and popular meaning of to put into another's possession by any means and on any terms.

1

A written instrument reciting that the signer has "given this day" to his niece $1500, to be paid at his decease by his administrator, in consideration of the niece's care and attention during the signer's sickness, is sufficiently ambiguous on its face as to whether it is a contract to pay, a gift, or a testamentary disposition, to admit extrinsic evidence to determine its nature.

An objection to the admission of evidence must state the ground thereof, unless it appears on the face of the question or offer that the evidence cannot be material or relevant in any state of the case.

In assumpsit against a decedent's estate on a written instrument purporting to be signed by the decedent and to give plaintiff $1500 payable by decedent's administrator for care and attention given decedent during his sickness, it was error to refuse to charge that, if decedent signed the instrument with intent to bind his estate, but part of the consideration was love and affection and part for services rendered with the understanding that they should be paid for, the jury could separate the consideration and determine how much was intended for services and how much as a gift, and return a verdict for the value of the services and disallow the remainder.

The statement in a written instrument, signed by a decedent and giving his niece $1500 to be paid by his administrator, that it was "in consideration of her care and attention during my sickness" is *prima facie* evidence in an action thereon against his estate that he received the stated care and attention, and the instrument does not show that the recited consideration was illegal.

Under P. S. 1589, as amended by No. 64, Acts 1908, in actions where one of the original parties to the contract in issue and on trial is dead the surviving party to such contract is a competent witness for himself to meet or explain the testimony of living witnesses produced against him as to facts taking place before, as well as after, the other party's death.

APPEAL from the decision of the commissioners on Jarvis T. Potter's estate disallowing a claim presented against that estate by the plaintiff. Declaration, special assumpsit on a written instrument purporting to have been signed by the decedent. Plea, the general issue with notice of the denial of the signature. Trial by jury at the September Term, 1910, Rutland County, Butler, J., presiding. Verdict and judgment for the plaintiff. The defendant excepted.

The plaintiff's claim is based on a written instrument dated February 17, 1905, purporting to be signed by the testator, and of the tenor following:

I have given this day to my niece, Kate Spencer, the sum

of fifteen hundred dollars ($1500), to be paid by the administrator of my estate at my decease. The above is given in consideration of her kind care and attention during my sickness in her home.                    Her Uncle, JARVIS T. POTTER.

In the court below the plaintiff declared in special assumpsit on said instrument, and the defendant pleaded the general issue, and gave notice thereunder that it should deny the execution of the instrument by the testator.

The testator had lived many years in Burlington and Essex in this State, and was a tin peddler and later a farmer. His wife died in 1903, and in the summer of 1904 he went to Clarendon, where he lived ever after, and where he had a half brother, John Spencer, and numerous other relatives, among whom were Sarah R. Spencer Hoag, the executrix, and Albert H. Spencer, children of John Spencer. The plaintiff is the wife of Albert H. Spencer. The testator lived with his brother, John, till some time in July, 1904, and then for a few weeks in July and August of that year he boarded with the plaintiff and her husband. He left their home the 15th of August, and boarded at the home of another relative, W. P. Horton, till September 8, 1905. John Spencer and Albert H. Spencer and his wife lived in the village of East Clarendon, and Horton lived in the village of Clarendon Flats. The executrix, Sarah R. Spencer Hoag, was not married till after the testator died, and lived in the same house with her father. The testator was accustomed to visit frequently at the homes of his relatives. He was eighty-four years old when he died in January, 1909, and was without occupation what time he lived in Clarendon. When he was boarding at Horton's, he went to East Clarendon rather frequently, and, when there, visited at Albert H. Spencer's and at the home of the executrix, their houses being near each other.

The plaintiff claimed, and her testimony tended to show, that at sometime in the fall of 1904, the testator came to her house frequently, sometimes staying over night, and that at sometime that year he was sick there with a hard cold, complained of pain in his chest, was feverish, and confined to his bed most of the time for a week or more, during which time she and her husband waited upon and cared for him, the plaintiff taking

the principal care during the day, and her husband during
the night.

The plaintiff's testimony also tended to show that sometime
before February, 1905, the testator was sick at her house about
ten days, and suffered pain in his bowels, and had diarrhoea
so that the sheets of his bed had to be changed occasionally,
and that she and her husband took care of him by day, she being
with him constantly, in and out of the room occasionally; that
sometime in 1904 or 1905, the witness thought along in 1905,
in the summer, because he was on a road cart, that anyway
it wasn't sleighing, Dr. Blossom called at the plaintiff's when
the testator was there with bowel trouble, and he testified that
he then asked the testator if he was having good care, and that
he said he was, very good, that "this little girl, (meaning the
plaintiff) is taking excellent care of me, and she shall have her
pay for it."

The plaintiff's testimony further tended to show that the
testator was in quite feeble health, and visited her house quite
frequently, and that on different occasions she had assisted and
cared for him, but that the occasions above referred to were
the only ones of prolonged illness, for the extent of which care,
reference is made to the transcript, which is made controlling.

It was claimed from the testimony that for sometime from
and after June, 1905, the relations between the testator and the
plaintiff were not friendly. The transcript is referred to  as
showing on what the claim is based.

The testator made a will after the date of the instrument
in suit, by which he distributed his  estate, amounting  to
between five and six thousand dollars, among his relatives
into twenty-four parts, leaving one cent to the plaintiff's husband.

The defendant claimed that it was never expected nor
understood that the care during the testator's sickness at the
plaintiff's house should be paid for, and that such services as
were rendered were out of personal regard and because of re-
lationship, and while the testator was there on a visit.

There was considerable testimony on both sides on the ques-
tion of the genuineness of the signature to said instrument,
a number of the plaintiff's witnesses testifying their opinion
that it was genuine, and a number of the defendant's that it

was not genuine. The instrument was admitted "under objection and exception by the defendant."

The defendant claimed, and its testimony tended to show, that on October 26, 1904, the testator made a gift to the plaintiff of $100, for which she executed a receipt, which is referred to.

The plaintiff's husband testified that the signature to said instrument is the genuine signature of the testator. On cross-examination he testified that a few days after October 6, 1906, he delivered a package to the testator and got his signature to a receipt therefor, and that later the testator demanded to know what the paper was that he signed, and wanted to see it, but that the husband did not show it to him. The defendant then produced the receipt and put it into the case, and in that connection claimed that the signature thereto was procured by Spencer and used by him or someone else as a model from which to copy the testator's signature onto the instrument in suit. On Spencer's re-direct examination the plaintiff introduced a letter dated June 2, 1906, with documents pinned to it, for the purpose of showing that the defendant's claim was not correct, and to show that in June, 1906, the instrument in suit was in existence, and had been submitted to an attorney in Cornell University for his opinion; and the letter and the documents pinned to it were limited to that purpose.

Said letter purported to come from the law office of Henry L. Allen, Hornorsville, N. Y., and was addressed to George Alvord, City. In it Mr. Allen, the writer, said he had examined the instrument left with him by Alvord the other day, and had examined some of the authorities on that subject, some of which he endorsed on a separate sheet together with the instrument and his opinion thereon. Pinned to the letter were two separate sheets containing a copy of the instrument, citation and discussion of legal authorities, and an opinion that the instrument is valid and enforceable. Spencer had testified that the plaintiff had a relative in the state of New York named George Alvord, to whom said instrument was sent, and that Alvord had submitted it to Henry Allen, an attorney, for an opinion, and that Alvord sent said letter and sheets in a letter of his. To their admission the defendant objected and excepted.

The defendant called an expert in handwriting who said,

speaking about what he noticed under the glass and in an enlarged photograph in the words, "Her Uncle", that they looked as if they had been written over twice; that some of the lines are followed quite accurately, and in other places you could see where the second stroke of the pen ran away from the first part—ran off the track as it were—had that effect about it; that he saw two aitches there, looking as if one had been made right over the other.

The plaintiff's testimony tended to show that all of said instrument except the words, "Her Uncle, Jarvis T. Potter"; was in her handwriting, and that those words were in the testator's hand.

In rebuttal the plaintiff was called and asked whether she could explain the appearance of tracing to which the defendant's expert had testified and how it came about, and she said she could. The defendant objected to her competency. The court ruled that her testimony should be confined to negativing the testimony of the expert in that respect, and that she should not testify who wrote the testator's name. The defendant excepted to her being permitted to testify at all. She was then asked whether she was present when the words, "Her Uncle, Jarvis T. Potter," were written, to which the defendant objected, but she was permitted to answer that she was, to which the defendant excepted. Her attention was then called to the expert's testimony about tracing, and she was asked whether the person who wrote the words, "Jarvis T. Potter," used more than one pen in writing them, and she said "He did, the person did", to which the defendant objected, even though cautioned by the attorney. The court said it would let that stand, and the defendant excepted to the answer, "He did". Counsel then asked witness with what kind of a pen he started to write, saying that he referred to the person who wrote. The defendant excepted to the use of the word "He", and the court ruled *he* and *she* should be left out. She was then permitted to testify that the person started to write with a fine pen and then changed to a stub pen and commenced at the beginning and wrote all the words with it; that neither she nor anyone else to her knowledge traced any of those words, and that she did not write

any part of them; to all which the defendant objected and ex-cepted.

The defendant moved for a verdict because the contract set up in the declaration is sought to be proved by the contested instrument itself, which is no evidence of a contract, as it was written after the two occasions of sickness occurred, and there is no proof that at the time the services were rendered and the care given it was understood and expected that they were to be paid for, and so they would constitute only a past consideration,—a past voluntary consideration, which would not support a subsequent promise to pay; and because the consideration in the instrument itself shows that it is not valid; and because the instrument shows on its face that it is not a contract to pay, but only an attempted testamentary disposition and therefore no contract,—an attempted gift *inter vivos* to take place after death, and therefore no gift. The motion was overruled and the defendant excepted.

The defendant asked the court to charge that if the jury should be convinced by a fair balance of the evidence that the testator signed said instrument understandingly, and with the intention of binding his estate, but that part of the consideration was kindly feeling, love and affection, and part was for services rendered with the understanding at the time that they were to be paid for, then and in that case the jury could separate the consideration, and determine how much was intended to be for services and how much as a mere gift or gratuity, and render a verdict for so much only as was intended for services, and disallow the rest. The court refused to charge as requested, to which the defendant excepted.

The court submitted to the jury to find whether the testator made, signed, and delivered said instrument as a contract, understandingly, and whether it was accepted by the plaintiff as such. Then it instructed them on the question of consideration, and told them that every contract, in order to be enforceable, must have a valuable consideration; that love and affection are not enough; that the testator must have received some substantial benefit for which he expected, or ought to have expected to pay; and that the plaintiff must have performed some substantial service for which she had a right to expect some

compensation in return; that said instrument states a consideration, and that, uncontested, a statement in a contract amounts to *prima facie* evidence of such a consideration as the instrument states; that this consideration must not consist of gratuity nor love; but of some substantial service for which the plaintiff expected, and was legally entitled to, compensation; that as the instrument itself states the consideration, if the testator signed it, and did it understandingly, then if the kind care and attention mentioned in it were valuable to him, the consideration was sufficient.

On the question of inadequacy of consideration the court charged that mere inadequacy would not defeat the instrument nor void the consequences of signing it, if signed understandingly and delivered as a contract and accepted as such, and the consideration was valuable; but that if it was intended as a mortuary gift, and the parties so understood it, then it was not a contract but a gift; that the statement of care and attention contained therein, tended to show a valuable consideration, and was *prima facie* evidence of the care and attention therein stated; that inadequacy might, however, tend to show fraud or mistake in obtaining the instrument, or that it was not delivered nor intended to have effect as a contract; that if the testator signed it and it went into the plaintiff's possession and remained there, the presumption arose that such an agreement was entered into as it purports to evidence; but that this presumption could be rebutted, and that the circumstances surrounding the parties at the time, the age and physical condition of the testator, and the inadequacy of consideration, if any, were to be considered as tending to show that the instrument was procured by fraud or mistake or was never delivered as a contract, and was never intended by the parties to become operative; that if the plaintiff failed to satisfy them that the parties intended that the instrument should be operative as a contract, and that it was delivered and accepted as such, without fraud or mistake, she could not recover; that it must have been knowingly and understandingly made and delivered as a contract between the parties, not as a gift *causa mortis*, to take effect at the testator's death, but as a real transaction, understood and intended as a contract between the parties.

The defendant excepted to what the court charged about
the instrument containing language *prima facie* implying con-
sideration, for that the language shows that the consideration
was not legal.

*M. C. Webber* for the defendant.

Defendant's motion for a directed verdict should have been
granted. The written instrument in question is not a contract
to pay, but is either an attempted testamentary disposition,
an attempted gift *inter vivos*, or *mortis causa*. As a testamentary
disposition it is, of course, void for want of proper execution.
As a gift *inter vivos* it is void because it does not vest till after
the donor's death. And as a gift *mortis causa* it is void because
not made in contemplation of death. One cannot make his
own promissory note the subject of a gift to such an extent
that it can be enforced by the donee against the donor in the
latter's lifetime, or against his estate after his death. *Parish
v. Stone*, 14 Pick., 198; *Sullivan* v. *Sullivan*, 7 L. R. A. (N. S.)
156; *Holly* v. *Adams*, 16 Vt. 206; *Smith* v. *Kittredge*, 21 Vt.
238; *Starr* v. *Starr*, 9 Ohio St. 74; *Rogers* v. *Rogers*, 73 Vt. 73;
*Carpenter* v. *Dodge*, 20 Vt. 595; *Warren* v. *Durfee*, 126 Mass. 338.

The consideration expressed in the writing is merely one
of gratitude and affection. Natural love and affection or grat-
itude are not sufficient consideration for a contract. 1 Daniel
Negotiable Instruments, §179; *Sullivan* v. *Sullivan*, 7 L. R. A.
(N. S.) 156; *Holly* v. *Adams*, 16 Vt. 206; *Bryant's Estate*, 73
Vt. 240; *Sawyer* v. *Hebard's Estate*, 58 Vt. 375; *Gillette's Appeal*,
74 Atl. 762; *Hamor* v. *Moore*, 8 Ohio St. 239; *Warren* v. *Durfee*,
126 Mass. 338; *Forbes* v. *Williams*, 15 Ill. App. 305; *Halliday*
v. *Atkinson*, 5 Barn. & C. 501.

The writing was not executed until after the services had
been performed; so that the consideration was a past one. 9
Cyc. 358; *Booth* v. *Fitzpatrick*, 36 Vt. 681; *Jackson* v. *Bissonette*,
24 Vt. 611; *Warren* v. *Durfee*, 126 Mass. 338.

The court erred in charging that the writing had language
in it importing *prima facie* consideration. *Rice* v. *Rice*, 68
Ala. 216; *Joseph* v. *Catron*, 1 L. R. A. (N. S.) 1120; *Sullivan*
v. *Sullivan*, 7 L. R. A. (N. S.) 156.

Defendant's sixth request to charge should have been granted, which asked that the jury be allowed to find what part of the consideration was for services and what part a gift. *Frost* v. *Frost*, 33 Vt. 639; *Parish* v. *Stone*, 14 Pick. 198; *Warren* v. *Durfee*, 126 Mass. 338; *Shotwell* v. *Struble*, 21 N. J. Eq. 31.

T. W. *Moloney* and *J. A. Merrill* for the plaintiff.

ROWELL, C. J. The defendant claims that the court erred in overruling its motion for a verdict, because the instrument declared upon is not a note, contract, nor an agreement to pay, but is either an attempted testamentary disposition or an attempted gift *inter vivos* or *causa mortis*; that considered as a testamentary disposition, it is void for want of proper execution; considered as an attempted gift *inter vivos* it is void because it is not to vest till after the death of the donor; and considered as a gift *causa mortis*, it is ineffective because not given in contemplation of death, the donor not then being sick, and not dying till four years afterwards.

As far as this claim includes elements not contained in the motion, it will not be considered, for such a motion must state the precise grounds on which it is based, and no others should be considered, nor were considered here as far as appears. *State* v. *Nulty*, 57 Vt. 543; *Bickford* v. *Travelers Ins. Co.*, 67 Vt. 418, 32 Atl. 230; *State* v. *Dyer*, 67 Vt. 690, 32 Atl. 814. Therefore we shall consider only the grounds stated in the motion, the first of which is, in substance and effect, that the instrument declared upon can not be proved by itself, as attempted, because it is no evidence of a contract, as it was written after the two occasions of sickness referred to; and as there is no proof that at the time the services were rendered and the care given it was understood and expected that they were to be paid for, they would constitute only a past voluntary consideration, which would not support a subsequent promise to pay. But this proposition is not maintainable, as shown by *Booth* v. *Fitzpatrick*, 36 Vt. 681, where it is held that though no legal obligation ever previously existed, yet, if the consideration, even without request, moves directly from the plaintiff to the defendant and inures directly to the defendant's benefit, the promise is binding though made upon a past consideration. Here there was such a consideration, as the motion assumes

for its own purposes, and as the court had a right to take it as assuming.

The other grounds of the motion are, that the consideration in the instrument itself shows that it is not valid; and that the instrument shows on its face that it is not a contract to pay, but only an attempted testamentary disposition and therefore no contract—an attempted gift *inter vivos* to take effect after death, and therefore no gift.

This part of the motion confined the court to an interpretation of the instrument without extrinsic aid, whereas, if it is ambiguous on its face and capable of two meanings, it was the right and duty of the court to look beyond the instrument to the circumstances of its origin and execution and the subject-matter of the trasaction, that it might the better ascertain the sense of the language used.

The question is, therefore, whether the instrument is ambiguous on its face in respect of being a contract, binding upon the defendant estate, instead of being a gift or a testamentary disposition, not binding upon the estate.

The defendant argues that the words *give* and *gift* have a well defined meaning in law, and imply a gratuity, the very opposite of an obligation to pay; that the words, "I have given," contained in the instrument, define a completed act, or one that the person using the words contemplated as a completed act; that the words, "The above is given," are of the same force and effect, but that there was no transfer of the money, as that was postponed till the death of the donor, when it was to be paid out of his estate; that, plainly, nothing was transferred at the time except the instrument itself, which must have been the thing the testator had in mind when he said, "I have given this day," and, "The above is given"; that the only word in the instrument in any way significant of a contract is the word, "consideration", but that this word as there used, does not import a contract, for it must be construed in connection, and to consist, with the other words of the instrument, and thus construed, it means the reason of the gift—the moving cause; that were this a bequest in a will, it might be worded, "I give to my niece, Kate Spencer, the sum of fifteen hundred dollars. The above is given in consideration of her kind care and attention

during my sickness in her home," which could not be construed as the recognition of a legal obligation, but only as the acknowledgment of a kindness; that in an instrument which in all other respects is in the form and language of a gift or bequest, the use of the words, "kind care and attention" and "consideration" does not import a contract obligation, but is entirely consistent with the other language in the instrument as importing a gift, while if construed as signifying a contract, those words are entirely opposed in sense to the rest of the instrument, and, therefore, should be construed to consist with the rest of it, and not in a way to do violence to its plain meaning.

But it can not be said, as claimed, that the word *give* has a well defined meaning in law, and implies a gratuity, the very opposite of an obligation to pay, for though its primary sense is, to transfer to the possession or ownership of another without compensation, yet it has a secondary sense in popular usage, in which it means, to put into another's possession by any means and on any terms. Thus, according to one dictionary, it means, to deliver or exchange for a consideration; deliver as an equivalent or in requital, recompense, or reward; pay, as, to give a good price, to give good wages; according to another, it is constantly used of that which is paid as a price or transferred as an equivalent.

Nor do the words, "I have given this day," necessarily define an act that the writer contemplated as completed, for though of themselves they denote recent past time, yet when taken with the words, "The above is given", which denote present time, they may as well mean present time as past time. Nor is it certain that the instrument itself was the thing the writer had in mind when he used those words, for they may quite as well be construed to indicate that he had the money in mind, as the word *above* in, "The above is given", can hardly be said to refer to the instrument, which was not above, instead of to the money, the mention of which was above.

Neither is it clear that the word "consideration", admittedly significant of a contract, does not import what it signifies, but means only the reason for the gift, as it is assumptively called—the moving cause; for the writer called the kind care and attention he had received at the hands of the plaintiff

a consideration for the money he directed to be paid to her out of his estate, the amount of which care and attention may have been abundantly sufficient to merit the sum named, for aught the instrument itself shows; and it cannot be said that such services can not constitute a valuable consideration for a promise to pay for them.

The defendant refers to many cases in support of its. contention; but it may be said in a general way that one decision as to the sense in which words are used can not be regarded as of much worth to guide a subsequent decision unless the circumstances are similar and the words practically identical.

It is to be borne in mind that the question here is, whether the instrument is ambiguous on its face so as to let in evidence of extrinsic facts in aid of its interpretation. In deciding this question, evidence of such facts can not be considered though in the case, a thing that the defendant does not have in mind, for it refers freely to such evidence in support of its claim. And herein lies the difference between this case and some of the cases upon which the defendant especially relies. Thus, in *Hamor* v. *Moore's Admr.*, 8 Ohio St. 239, the instrument was construed with the aid of extrinsic facts found on trial. So in *Forbes* v. *Williams*, 15 Ill. App. 305, the mention of services in the instrument as a consideration was held to be a sham, as shown by the evidence.

But it is unnecessary further to consider the cases referred to, for we are satisfied that the instrument is sufficiently ambiguous on its face to let in evidence of extrinsic facts in aid of its interpretation. No question is made concerning the relevancy of the testimony on that point nor the use made of it. The motion, therefore, was properly overruled.

This answers the further contention that the instrument should not have been admitted in evidence as tending to support a contract because it is in terms an attempted gift or testamentary disposition and no evidence of a contract.

It is contended that the court erred in admitting the letter of June 2, 1906, from Allen to Alvord, and the documents pinned thereto, because not admissible for the purpose offered, as the defendant had not opened up its admission. It is conceded that in view of the defendant's claim that the receipt for the

package was procured for the purpose of using the testator's signature thereto as a model, the plaintiff could show by proper evidence that the instrument was already in existence; but contended that she could not import said letter into the case, as it had no probative force in itself, and was between persons not parties here; that the purpose was to show the date of the letter, but that there is no proof of the authenticity of the letter nor that it was ever written by Allen and received by Alvord, nor that the date was correct; that the most the testimony showed was that plaintiff's husband said he received the letter in one from Alvord; that it is in effect the testimony of Allen as to the validity of the instrument; and that it was not necessary to resort to the letter and the accompanying documents in order to get evidence before the jury that the instrument was in existence before October 6, 1906, for plaintiff's husband had already testified that he saw the instrument from two to six months after February 17, 1905.

It is to be noticed that no ground of objection was stated to the admission of this letter and the accompanying documents, the exceptions showing only that "to their admission the defendant objected and excepted". This Court has had frequent occasion of late to state and enforce the rule in respect of such exceptions. The last time was in *Townshend* v. *Townshend*, 84 Vt. 319, 79 Atl. 388, where it is held to be the general rule that objections to the admission of testimony must be such as to indicate the precise point that the Court is asked to rule upon; but that this rule has its exceptions, one of which is, when the offered evidence can not be material nor relevant in any state of the case, and that is apparent on the face of the question asked or the offer made, a general objection is sufficient. Mr. Wigmore says that "the cardinal principle no sooner repeated by courts than forgotten by counsel, is, that a general objection, if overruled, can not avail"; and that "the only modification of this broad rule is, that if on the face of the evidence in its relation to the rest of the case, there appears no purpose whatever for which it could have been admissible, then a general objection, though overruled, will be deemed to have been sufficient". And he sustains his statement of the rule and its modification by reference to many cases. 1 Wig. Ev. §18,

page 57 *et seq.*    Applying this rule to this exception, it is manifest that it can not prevail.

The defendant requested the court to charge that if the jury was convinced that the testator signed the instrument understandingly and with the intent to bind his estate, but that part of the consideration was kindly feeling, love and affection, and part was for services rendered with the understanding that they should be paid for,—then the jury could separate the consideration, and determine how much was intended to be for services and how much to be a gift or gratuity, and render a verdict for the services and disallow the rest.    The court should have complied with this request on the strength of *Frost* v. *Frost's Estate*, 33 Vt. 639, which was assumpsit by a sister against the estate of her brother for work and labor done and performed by her in and about the business of keeping his house for about six years next before his death.    The case made by the plaintiff was, that she went to keep house for her brother at his special instance and request, nothing being said about her services nor pay therefor for more than a year, when he called her into his room one day and gave her his note for $300, payable on demand with interest, and said to her; "That is for your first year's services, and I will give you a similar note yearly as long as you live with me and keep my house", and told her to remember that she could not be benefited by that note nor by others that he gave her, while he lived, as it was for her support if she outlived him.

The plaintiff claimed that the three hundred dollars a year, which she sought to recover, was the stipulated consideration for her services, and the court charged that if that was so, she was entitled to recover what she claimed.

But the defendant claimed that its testimony tended to show that the alleged contract was a mere promise to give the plaintiff three hundred dollars a year out of the promissor's estate after his death and that no part of it was really a compensation for her services; but that if that was not so, yet it might properly be viewed that the contract was in part founded on the plaintiff's services and in part on a gratuity to take effect after the intestate's death, and that the contract was divisible, so that the plaintiff might recover what was intended as compen-

sation and not what was intended as a gift.   The court charged
against recovery if defendant's first claim was found to be true,
but refused to charge on the subject of its second claim, but
charged that if the contract was not valid, the plaintiff could
recover the value of her services under the common counts.

This Court held that the testimony might well be regarded
as tending to show that the contract was in part a promise of
a gratuity, and that the trial court should have instructed the
jury accordingly, if the contract was divisible, which the Court
held it to be.   In discussing that question the Court said that
if the parties understood and agreed that it was partly a contract
to pay the plaintiff for her work and partly a gratuity to provide
for her out of her brother's estate, the law must adapt itself
to that intention; that the parties not having severed these
amounts, it was for the jury to separate them, and to allow
the plaintiff for her services what was just and fair according
to the spirit of the   contract and the meaning of the parties.
The Court referred to *Parish* v. *Stone*, 14 Pick. 198, 25 Am.
Dec. 378, as directly in point and a most satisfactory exposition
of the law.   That was an appeal from a probate decree allowing
an account presented by the defendant as executor of the last
will of the testator.   The defendant was allowed in his adminis-
tration account as due to himself, the amount of a 600-dollar
promissory note signed by the testator and payable in one year
after his death.   It appeared that the defendant was the son-
in-law of the testator.   The note was proved to have been made
during the testator's last sickness, and as well for the purpose
of compensating the defendant for certain services as for equaliz-
ing more effectually the distribution of the testator's property
among his children than was done by his will previously executed
and afterwards established.   The jury was instructed to inquire
whether there was any legal consideration for the note, and if
so, to what extent, and it found that there was such a consid-
eration on account  of services rendered to the amount of $115.
The question was whether judgment should be entered for the
amount thus found, or for the full amount of the note; and it
was adjudged that it should be entered for the amount found.
The court, carefully distinguishing between failure of consider-
ation and want of consideration, deduced from the cases the

rule that when a note is not given upon any one consideration that, whether good or not or fails or not, goes to the whole note at the time it was made, but was given for two considerations, each going to a distinct part of the note, and one is a consideration that the law deems valid and sufficient to support the contract and the other not, then the contract shall be apportioned, and the holder shall recover to the extent of the valid consideration and no further; and that, in the application of this principle, there is no reason why it should depend upon the state of the evidence showing that the different parts can be ascertained by computation, that is, whether the evidence shows them to be respectively liquidated or otherwise, and that the fact, what amount is upon one consideration and what upon the other, like every other questionable fact, should be settled by the jury upon the evidence.

But the plaintiff contends that there is no testimony tending to show that there was any consideration for the instrument except the consideration expressed in it; that there is no evidence tending to show that the instrument was by the plaintiff's procurement made for a larger sum than the signer understood, and none to show any failure of consideration from the understanding of the parties; and nothing to show ability by computation to fix the amount that should be deducted; and, therefore, that the defendant was not entitled to a compliance with its request; and that *Giddings* v. *Giddings*, 51 Vt. 227, 31 Am. Rep. 682, and *Porter* v. *Evart's Estate*, 81 Vt. 517, 71 Atl. 722, are conclusive against the defendant on this point.

But it is no answer to say that there is nothing to show that there was any consideration for the instrument except the consideration expressed in it, if that consideration is apportionable and the promise, if any, is divisible, as we think they are; for, as we have seen, the instrument is sufficiently ambiguous on its face to let in evidence of extrinsic facts in aid of its interpretation; and such evidence was let in, and in the light of it the plaintiff claimed that the instrument should be interpreted as a contract to pay for services and wholly binding, while the defendant claimed that it should be interpreted, both on its face and in the light of the evidence, as a mortuary gift and nothing more, and so wholly void; but if not that, then it should

2

be interpreted as only partly for services and partly a mortuary gift, and therefore good in part and bad for the rest. And we think the instrument is capable of being thus interpreted in the light of the evidence as well as of being interpreted as all one thing or all the other, as the case was put to the jury, because, for one reason, the sum of $1,500 named therein is so large for the services shown to have been rendered, that it goes to prove that something more than compensation was intended.

It is not, however, necessary for present purposes to determine whether or not there is anything to show that the plaintiff procured the instrument to be made for a larger sum than the signer intended, for the question now being considered does not hinge upon that. Nor is it material that there is no failure of consideration, nor any data for computing the amount to be deducted, for this is not a question of failure of consideration but of want of consideration, which are very different propositions in law, and governed by different rules, and consequently *Giddings* v. *Giddings*, 51 Vt. 227, 31 Am. Rep. 682, upon which the plaintiff so much relies, is not in point, for what is there said about the necessity of having adequate data for fixing by computation the sum to be deducted, is said of a claimed partial failure of consideration, and not of a partial want of consideration, as here. Nor is *Porter* v. *Evart's Estate*, 81 Vt. 517, 71 Atl. 722, upon which the plaintiff also relies, in point; for there the instrument, which was in part a contract obligation and in part in the nature of a mortuary disposition, showed clearly upon its face the division between the two.

The defendant relies upon its exception to what the court charged about the instrument containing language *prima facie* implying consideration, for that the language shows that the consideration was not legal. There are two answers to this exception. One is, that the court did not charge that, but charged that the instrument stated a consideration, and that, uncontested, a statement in a contract amounts to *prima facie* evidence of such a consideration as the instrument states. That means in this case, what is undoubtedly true, that the statement of consideration in this instrument is *prima facie* evidence against the testator's estate that he in fact received at the hands of the plaintiff the care and attention stated therein. But

the court did not charge that that was enough to sustain the instrument as a contract, for it went on to charge what more was necessary for that, to which no exception was taken. The other answer is, that the language of the instrument does not show that the consideration was not legal.          -

The defendant claims that the plaintiff was not competent under the statute to testify at all, not even to the extent the court ruled that she was, namely, to negative the testimony of the defendant's expert in respect of tracing, because the expert gave no testimony that the plaintiff could meet or explain by testifying with regard to the circumstances of the writing of the signature; that his testimony was that of an expert, given from an examination of the instrument by an enlarged photograph and under the glass; and that such testimony could afford no possible ground for the plaintiff to be permitted to testify in any way about the making of the instrument nor the signing of it.

Under P. S. 1589, the plaintiff could not have testified in her own favor except to meet or explain the testimony of living witnesses produced against her as to facts and circumstances taking place after the death of the testator. This section was amended by the Acts of 1908, No. 64, Sec. 1, by omitting the words limiting the exception to facts and circumstances taking place after the death of the other party, thereby removing the time limit altogether, and making the surviving party a competent witness in his own favor to meet or explain the testimony of living witnesses produced against him as to facts and circumstances taking place before the death of the other party as well as after.

It is considered therefore, that the plaintiff was competent to testify how the tracing happened that the expert saw, for that met his testimony which related to a fact taking place before the death of the testator, and tended to sustain the defendant's claim that the testator's signature was obtained to the receipt for the purpose of tracing it on the instrument in question, and tended to sustain the issue of forgery made by the defendant.

But whether the plaintiff was led too far by counsel in this behalf, or was allowed by the court to go too far, we need not

inquire, for it is certain enough that circumstances can never again combine to present the same question.

*Reversed and remanded.*